### RUSHING v. SMEDLEY et al.
### No. 4142.

Court of Appeal of Louisiana, Second Circuit, Second Division.

June 11, 1932.

Murff & Perkins, of Shreveport, for appellants.

Wallace & Hardeman, of Benton, for appellee.

STEPHENS, J.

This is a petitory action in which the plaintiff seeks to be recognized as the true and lawful owner of the following described land situated in Bossier parish, La., to wit: "Beginning at the southeast corner of Section 12, Township 18 north, Range 12 west, and running 790 feet west; thence north 120 feet to Shreveport and Minden road; thence east along said road to the intersection of Minden, Haughton and Shreveport roads; thence along said Haughton road to a point where said road crosses the east line of Section 12, Township 18, north, Range 12, west; thence along said section line a distance of 32 feet to the point of beginning, all of said described lands being in Section 12, Township 18 north, Range 12 west."

The plaintiff alleges a record title to the described land by mesne conveyances from the United States government; and avers that the defendants are in the actual, physical possession of the property, without any title whatsoever; and that they have refused to deliver possession thereof without good or legal cause for such refusal.

The defendants answered, admitting that they are in possession of the land claimed by the plaintiff, but denying that said land is in section 12 as alleged; but averring that it is in section 13. Further answering, the defendants aver that they are the lawful owners of, and in possession of, the E. ½ of the N. E. ¼ of section 13, township 18 north, range 12 west, Bossier parish, La., which includes the property claimed by the plaintiff, which is a six-acre strip of said land lying south of the Shreveport-Minden-Haughton road; that said described land was purchased by Hector and Mariah Moory, father and mother, respectively, of the defendants, from one B. R. Springfield in the year 1889; and that they inherited said land from their father and mother, both now deceased, whose successions they have accepted; that the said land extends to and adjoins the Shreveport-Minden-Haughton road on the south side thereof, but does not extend into section 12, as alleged by the plaintiff. The defendants further aver in the alternative that, if the land in dispute be found by the court to lie in section 12, they, and their father and mother, before them, have been in the actual, physical, notorious, public, peaceful, and uninterrupted possession of the said strip of land in dispute, in good faith, and as owners for more than forty years; and for more than thirty years the northern boundary of their property, which includes the six acres in dispute, has been and is now marked by a fence along said public road, which said fence and road has been tacitly recognized by the plaintiff's authors in title as the north-ern boundary thereof; and that, if the plaintiff or his authors in title ever had any right or title to the strip of land in dispute, the same is now prescribed and lost to him by the prescription of thirty years, which said prescription they specially plead.

The defendants further aver in their answer that on or about November 1, 1925, the plaintiff herein unlawfully took possession of the land in dispute, and claimed to be the owner thereof against their protests; that they instituted a possessory action against the plaintiff, in which judgment was rendered, recognizing them as the rightful possessors of said land, and reserving to them the right to sue for rent and damages caused by plaintiff's disturbance of their possession.

They pray that the demands of plaintiff be rejected, and in the alternative that the plea of prescription of thirty years be sustained and for damages in the sum of $700.

It is apparent that, if the land in dispute lies in section 12, the plaintiff should recover upon the record title, but, if it does not, the plaintiff's demand should be rejected.

In order to determine the controversy by fixing the boundary between sections 12 and 13, three surveys were made; one by Mr. Neatherly, appointed by the court for that purpose; another by Mr. Hardeman; and a third by Mr. Dutton.

The trial court overruled the plea of prescription of thirty years, and adopted the section line as established by the survey of Mr. Neatherly, which had the effect of dividing the land in dispute between the plaintiff and the defendants; and all parties appealed.

The line as fixed by Mr. Hardeman locates all of the property in dispute in section 12; while the survey of Mr. Dutton placed it all in section 13. If the Hardeman line be adopted, the plaintiff is entitled to recover; if the Dutton line be held correct, the plaintiff's demand must be rejected; and, if the Neatherly line be adopted, the property must be divided almost in half, as was ordered by the district judge.

Each of the surveyors gave equally plausible reasons in support of the correctness of their findings, and the findings of each vary so completely we must confess that we are at a loss to determine from the evidence adduced where the section line should be established.

■ Fortunately, however, we find it unnecessary to settle that confusing question in order to decide this controversy, as we are of the opinion that the record clearly discloses that the title to the property in dispute is in the defendants by virtue of prescriptive possession of thirty years.

In 1889, and for a number of years prior thereto, the property north of the land in dispute and north of the public road was

332

owned by John J. Edwards, Sr., the author in title of plaintiff. The property south of the public road and adjoining the Edwards place was owned by Hector Moory, an old negro; the land in dispute being included within the Moory fence, running along the south side of the road.

The actual possession as owners of the land in dispute by the defendants through their father and mother began in 1889. Their actual possession as owners has since been continuous, uninterrupted, undisturbed (with the exception hereinafter referred to), public, and unequivocal to the date of the filing of this suit.

As alleged in the defendants' answer, the plaintiff disturbed the defendants' possession in 1925, but they were quieted therein by a final judgment of court in a possessory action in 1926.

With these facts before us, which are unquestionably established by the record, we have only to examine the evidence supporting the attempt of the plaintiff to show that certain of the defendants paid rent on the land in dispute to the plaintiff's author in title, thereby acknowledging ownership in another and interrupting their possession as owner.

The only witness introduced by the plaintiff in this connection was Mr. Frank Edwards, whose evidence is to some extent contradictory and very unsatisfactory. We quote from his testimony as follows:

"Q. Old Hector Moory never paid any rent? A. Who?

"Q. Hector Moory? A. He was dead at the time when we found out this line run there.

"Q. If you hadn't found out the line run there how was he paying rent all this time? A. The line was run, then is when we collected rent.

"Q. They have not paid rent for the last forty or fifty years? A. Yes, sir, inside of forty, I told you about fifteen years ago.

"Q. Fifteen years they have been paying rent? A. Yes, sir.

"Q. Old Hector never paid you any (rent)? A. No, sir.

"Q. Hector died in 1918, just twelve years ago—A. I don't know how long it has been."

It will be noted that Mr. Edwards stated that Hector Moory did not pay rent because the line had not been run prior to his death; and that rent was not collected until the line was run. As there is no suggestion in the record anywhere that any line, other than the Hardeman line, fixed the southern boundary of the strip of land in dispute, we must conclude that the witness was referring in his testimony to that line, which was the result of a survey in 1926.

We quote further from Mr. Edwards' testimony:

"Q. How long did they rent it Mr. Edwards? A. Several years, some years they didn't rent it, didn't work it at all, a few years they did, and paid a little rent.

"Q. Do you remember about how much they paid and who paid? A. Paid some to me, I collected some myself.

"Q. How much was it, and who paid that rent? A. It was mostly paid by Hector Moory.

"Q. Who was Hector Moory? A. The father of these children, Mariah Moory's first husband, and he died and she married John ———."

Here it will be noted that, notwithstanding the statement that Hector Moory paid no rent, and that the witness assigned a reason for his failure to do so, as noted above, it is stated that it was "mostly" paid by Hector Moory.

We find in Mr. Edwards' testimony the following: "Q. How long have you known the vicinity and land, and everything in dispute in this case of Rushing against Smedley? A. I have lived on that place for the last twenty years, fifteen or twenty years."

This testimony referred to the Edwards' home place, adjoining the land in dispute.

Again we quote Mr. Edwards: "Q. Have you not been off a good long time? A. Been on and off, I have not lived on it for the last fifteen years."

This statement refers to the identical Edwards home place, and indicates that the witness was very careless in testifying, or had but little regard for the oath administered to him.

Two of the defendants who were born on the old Hector Moory place testified as to their continuous, peaceful possession as owners of the land in dispute until the disturbance in November, 1925, at which time the plaintiff built the fence, which segregated it from their other land, and took possession of it.

They further testified that they had never rented the land from Mr. Edwards, but that their mother had rented it to him for a pasture (together with other land they owned adjoining and not separated from it by fence), for a year at a time intermittently for several years.

The testimony of the defendants is much more reasonable than that of Mr. Edwards. The latter testified that the fence was not built which segregated the land in dispute from the land admittedly owned by the defendants until the line was run. The line was run in 1926. Is it reasonable to suppose that, prior to the time the line was run and the said fence erected, he claimed to own, and leased to the defendants, land, the southern boundary of which he had no means of know-

ing, and which was admittedly under the fence of the defendants? We think not.

 The possession of the defendants began as owners and thus continued, admittedly, for many years. The law presumes that it continues as it commenced; and the burden is on the plaintiff to show that the defendants have acknowledged ownership in another, and he has not sustained that burden.

We do not consider the testimony of Mr. Hickman of any value whatever to the plaintiff. He testified that he had heard—and that to the best of his knowledge be believed—that the segregating fence was built many years ago, which, of course, would mean that it was built prior to the Hardeman survey. Mr. Edwards says it was not built prior thereto. If it had been, that fact could have been established beyond question.

The fact that the possessory action was commenced and successfully prosecuted by the defendants in 1926 strongly suggests that the plaintiff or his authors in title had asserted no claim to the land in dispute prior to 1925. The plea of prescription should have been sustained.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that there now be judgment in favor of defendants, sustaining the plea of prescription of thirty years, and rejecting plaintiff's demand at his costs.