393 So.2d 294 (1980)
Isaac Anderson MINTON et al.
v.
Barbara Minton WHITWORTH et al.
No. 13785.
Court of Appeal of Louisiana, First Circuit.
December 15, 1980.
*295 Ernest Hartenstine, Denham Springs, for plaintiffs-appellants.
James A. Smith, II, Baton Rouge, for defendants.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge.
This is a partition suit, in which plaintiffs Isaac Anderson Minton and Nelson Minton seek to partition in kind three 16-acre tracts of ground situated in the west half of the southeast quarter of Section 36, Township 6 South, Range 3 East in Livingston Parish. Defendants are Barbara Minton Whitworth, Marjorie McGowan St. Amant, Catherine Lynn McGowan Wells, Lucy Vera Minton McGowan, Betty Joyce McGowan March and Mary Esther McGowan Milton. Defendants filed peremptory exceptions of prescription and of no right of action. The exceptions were tried on a stipulation of facts, and judgment was rendered sustaining the exceptions and dismissing plaintiffs' suit. Plaintiffs have appealed.
Isaac Admiral Minton, the ancestor of all parties hereto, was married first to Brunette Ann McDonald Minton, and of this marriage, ten children were born. On February 1, 1901, during the existence of his first marriage, Mr. Minton purchased three tracts of land: a 51.2-acre tract in Section 6, Township 7 South, Range 4 East; 80 acres of land in Section 36, Township 6 South, Range 3 East; and a 34.36-acre tract which adjoined the 80-acre tract.
Brunette Minton died in 1904, her succession was opened and an inventory of its effects made. Mr. Minton petitioned to have the interest of his seven minor children in the 51.2-acre tract and a one-acre tract adjudicated to him, and to have the minors given a special mortgage on the 34.36-acre tract and the 80-acre tract as security. A family meeting approved the adjudication, but no further pleadings or judgments appear in the record.
Nevertheless, Mr. Minton, joined by his three major children, sold the one-acre tract in January, 1905, and in April, 1908, Mr. Minton alone sold the 51.2-acre tract.
After the death of Brunette Minton, Mr. Minton married Ethel Corinne Sibley Minton, *296 and four children were born of the marriage, including plaintiffs and two other children who died without issue. Ethel Sibley Minton died in 1912.
On April 25, 1914, the children of the marriage of Isaac Admiral Minton and Brunette McDonald Minton executed an act of partition of the 80-acre tract, the 34.36-acre tract and the 51.20-acre tract. Three of the children, Mable C. Minton, Lucy V. Minton and Mattie P. Minton, were minors, and were represented by their father and tutor, Isaac Admiral Minton. The act of partition contains, inter alia, the following language, after naming the parties:
"... who Severally declared that they are owners in common, each for one undivided portion of the following described property inherited by them from their Mother's Succession and now in their possession to-wit: ..."
There follows a description of the three tracts to be partitioned, and a list of the lots into which the tracts had been divided and the child to whom each lot was granted. There then follows this language:
"... now the parties being fully Satisfied with the division made by each of them and in order to carry out the said partition accordingly and to Confer upon each a full and Complete title in due form to the property herein alloted to them, severally declared and acknowledged that they do hereby make and effect Said partition in an authentic form in the manner above expressed and that from henceforth the Said property firstly described shall belong to Mary A. Peak wife of T. E. Peak being lot 2. Secondly Ella Peak wife of H. M. Peak being lot Eight (8) Thirdly Eva Peak wife of T. M. Peak being lot ten. Fourthly Amy LaLamundier wife of Henry LaLamundier being lot No. (6) Six Fifthly shall belong exclusively to Joseph D. Minton unmarried being lot No. Nine (9) Sixthly to John Minton being lot No. one, and in the consideration of the premises all in order to better carry out Said partition and to vest each of them with absolute to title the property herein received by them as their share the said parties hereto do hereby declare as follows that Each of them declares that in Consideration of the property recieved by each of them as their full share in this partition they do hereby Sell assign Convey transfer and deliver with all legal warranties and with subrogation to all their rights and actions in warranty against all preceding owners and vendors unto each other accepting for themselves their heirs and assigns and acknowledging due delivery and possession thereof all and each of them their rights titles share portion interest and ownership and demands whatsoever in and to the property as described above, the parties declared that the property received by each as their Share being of equal value as the property received by the other no return of money is to be made to any of them and that by means of this partition is in possession and owner in full owner in full ownership to the property herein allotted to them as their Share and they discharge each other from all Claims demands matters and things whatsoever in the premises hereby acknowledging themselves respectively to be fully satisfied with this partition."
The partition is executed by all of the major heirs and by I. A. Minton, who executed the partition without designating himself as tutor. On May 21, 1923, Lucy V. McGowan executed the instrument, and on September 27, 1924, Pearl Minton Oates executed it, accepting Lot 7 as her "full share in the within named succession and hereby grants a full and complete release of all demands on the part of her father ..."
On March 7, 1929, Isaac Admiral Minton died, and his succession was opened by creditors. The only property inventoried therein was one lot of ground in Doyle, Louisiana. The property which is the subject of this suit was not included therein.
This suit was filed on October 12, 1977. Plaintiffs allege that Isaac Admiral Minton was the owner of an undivided one-half community interest in the subject property, plus an undivided 3/80 inherited from predeceased children, and that his interest therein *297 was inherited by his children who survived him. They further allege that the named defendants are the present record owners of the three tracts sought to be partitioned herein. They ask for a determination of the interest of the parties herein in the subject properties, and for a partition thereof.
The peremptory exception of prescription which was maintained by the trial court is based on the proposition that defendants have been in actual, physical, corporeal and uninterrupted possession of the subject properties for more than 30 years.
Article 1305 of the Civil Code provides:
"When one of the heirs has enjoyed the whole or part of the succession separately, or all the coheirs have possessed separately each a portion of the hereditary effects, he or they who have thus separately possessed, can successfully oppose the suit for a partition of the effects of the succession, if their possession has continued thirty years without interruption."
Our jurisprudence has engrafted upon the clear provisions of the above article, and upon the provisions of the articles relating to the prescription of 30 years acquirendi causa, in cases in which co-owners are involved, the requirement that notice must be given to one's co-owners that the possession enjoyed by the claimant is hostile and adverse to the interests of the co-owners. Articles 3499, 3500, 3548, Civil Code; Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953); Delaune v. Williams, 308 So.2d 374 (La.App. 1st Cir. 1975).
Since it is stipulated that defendants have enjoyed "actual, open, peaceable, public, unequivocal, continuous and uninterrupted corporeal possession" of the properties for periods well in excess of 30 years prior to the filing of suit, the only question presented by this case is whether or not there was sufficient notice that the possession was adverse to the co-heirs so as to start the running of prescription.
We find that the language contained in the act of partition, quoted above, is a clear indication that the parties thereto considered themselves to be the owners of the full interest in the lots which they received in the partition. Since Isaac Admiral Minton was not only a signatory to the act, but accepted three parcels of the property on behalf of his minor children, we find that he had notice of their claim of full ownership. The act of partition further acknowledges the possession of the property partitioned by the parties thereto.
Although an act of partition may not be translative of property when the language of the act clearly imports that the parties have full ownership of the parcels received by them, the partition constitutes notice to any co-owners that subsequent possession of the property is adverse and hostile to their interests. Dupuis v. Broadhurst, 213 So.2d 528 (La.App.3rd Cir. 1968).
Since Isaac Admiral Minton was the only person who had an adverse claim, the prescription of 30 years began to run as to him immediately on the execution of the act of partition. It continued to run after his death against his heirs, including the plaintiffs herein, who can be in no better position than their ancestor.
The argument that the parties to the partition were dividing only their mother's undivided one-half community interest therein, because the property divided is described as being inherited from their mother's succession is without merit. All of the quoted language in the deed makes it unmistakably clear that all parties, including Isaac Admiral Minton, believe they were partitioning the full interest in the property.
The judgment appealed from is affirmed, at plaintiffs' cost.
AFFIRMED.
WATKINS, Judge, dissenting.
The holding of the majority sustaining the plea of prescription is based in part upon the finding that the execution by Isaac A. Minton of the act of partition constituted notice to him of an intention of the heirs of the first marriage to possess in a manner hostile to him. Ordinarily, possession *298 of one co-owner is considered to be on behalf of all co-owners, and cannot furnish the basis for acquisitive prescription. However, one or more co-owners can possess adversely to other co-owners, and thereby obtain the advantage of acquisitive prescription, if the possession is clearly hostile and notice is given of an intention to possess adversely to the other co-owners. The filing of record of a deed translative of title or an act of partition can furnish the basis of such notice. See Succ. of Seals, 243 La. 1056, 150 So.2d 13 (1963); Continental Oil Co. v. Arceneaux, 138 So.2d 399 (La. App.3d Cir. 1966), writ refused 249 La. 66, 184 So.2d 736 (1966); Detraz v. Pere, 183 So.2d 401 (La.App.3d Cir. 1966), writ refused 249 La. 119, 185 So.2d 529 (1966); Dupuis v. Broadhurst, 213 So.2d 528 (La.App.3d Cir. 1968), writ refused 252 La. 966, 215 So.2d 131 (1968); Givens v. Givens, 273 So.2d 863 (La.App.2d Cir. 1973), writ refused 275 So.2d 868 (1973). We agree with the majority opinion that the execution of an instrument of partition by a co-owner in his individual capacity that clearly apportions full ownership by a division in kind and fails to apportion a tract to that co-owner constitutes notice to that co-owner that he has divested himself of all title. However, I think it is obvious that such a divestiture must be clear and free from ambiguity to constitute or take the place of the requisite notice.
The act of partition clearly recited that Isaac A. Minton appeared as tutor. Its recitation of parties never indicated that Isaac A. Minton also appeared in his individual capacity. Isaac signed as "I A Minton" without the word tutor appearing opposite his name, although one William C. McDonald signed with the notation apparently not in McDonald's handwriting "Under Tutor". Clearly, I cannot find from the face of that act of partition that Isaac A. Minton signed in his individual capacity as well as tutor of the minors, and there are no other stipulated facts that would tend to indicate that he also signed in his individual capacity. I do not find the fact that the word "tutor" was not mentioned opposite Isaac's signature furnishes sufficient indication of an intention to partition his interest as well as that of his late first wife, Brunette.
Further, the act of partition purported only to divide "the following described property, inherited by them from their mothers (sic) succession ...". That language would indicate that only the mother's interest was being partitioned, and not the whole. However, on the other hand, the act of partition recited "whereas they wish to no longer remain in indivision of said property and desire to amicably to (sic) divide the Same (sic) between them-Selves (sic)..." and further "... to confirm upon each a full and complete title in due form to the property herein alloted (sic) to them..." and still further "to better carry out Said (sic) partition and to vest each of them with absolute to (sic) title the property herein received by them ..." and also "that by means of this partition is in possession and in full ownership to the property herein alloted (sic) to them ...". That language indicates an intention to divide the full ownership. However, that language is clearly, in present-day legal slang, "boilerplate", and was obviously copied by the notary from a formulary, as is evidenced by the many errors made in copying therefrom. (The act of partition was handwritten.) At most, if one considers the recitation that the property inherited from Brunette's succession was being partitioned, the instrument can be taken either way, as indicating an intention to divide only the mother's interest, or as indicating an intention to divide the whole.
This case breaks new ground in holding that the execution of an instrument by a co-owner which fails to indicate the existence of his interest furnishes notice to that co-owner of the intention of the remaining co-owners to possess the whole in a manner hostile to him. I have no quarrel with that expansion of the law, per se. However, the instrument which serves as notice should be free from ambiguity. In the present case the instrument in question could be accorded more than one reasonable interpretation, and was thus manifestly ambiguous.
I respectfully dissent.