446 So.2d 862 (1984)
FRANKS PETROLEUM, INC., Plaintiff-Appellee,
v.
Martiel Colvin BABINEAUX, et al., Defendants-Appellants.
FRANKS PETROLEUM, INC., Plaintiff-Appellee,
v.
Joe C. COLVIN, et al., Defendants-Appellees. (Two Cases).
Nos. 16046-CA to 16048-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*864 Rellis P. Godfrey, Shreveport, for defendants-appellants, John A. Colvin and Mattie Sue Colvin.
Shotwell, Brown & Sperry by C.A. Martin, III, Monroe, for plaintiff-appellee, Franks Petroleum, Inc.
Walker, Holstead & Smith, Ruston, for defendants-appellees, Virginia Colvin Meadors, Clyde C. Colvin, Jr., James Harry Babineaux, Judith Babineaux Wells, Joe C. Colvin, Gerald Glen Colvin, Fred H. May, Jr., Mabel May, Harold Butler Colvin, Emmett Lee Colvin, Willis Carroll Colvin, May Larance Colvin, Luther Colvin, Douglas Colvin, Terrelle Gray Colvin, and Kerr-McGee Corp.
Before HALL, JASPER E. JONES and SEXTON, JJ.
HALL, Judge.
In this concursus proceeding brought by the operator of producing gas units, the district court resolved the dispute between two sets of record co-owners, identified as the "Group A defendants" and the "Group B defendants", by holding that the Group A defendants had acquired full title to the properties involved by acquisitive prescription based on adverse possession by them and their ancestors for more than 30 years after notice of such adverse possession to the Group B defendants and their ancestors. From judgments recognizing the Group A defendants and those holding under them as entitled to the mineral and/or royalty interests involved, the Group B defendants appealed. Finding that the issues were correctly resolved by the district court in its comprehensive, studious reasons for judgment, we affirm.
On appeal, the appellants urge that the trial court erred in holding that a recorded ex parte judgment of possession sending the Group A defendants into possession of the properties involved constituted sufficient notice that their possession was as owners and adverse to the Group B defendants, and that the court erred in failing to find that the only actual notice of adverse possession was given in 1950, less than 30 years prior to the commencement of this litigation.
The property was acquired by C.C. Colvin and his brother, John A. Colvin, in 1874. The Group A defendants are the heirs of C.C. Colvin and his wife. The Group B defendants are the two children of one of the 10 children of John A. Colvin and his wife. The widow and all the other heirs of John A. Colvin executed quitclaim deeds of their interests in the properties to the Group A defendants in 1937 and 1938. The quitclaim deeds recited that C.C. Colvin purchased the interest of John A. Colvin in the property, and paid for the interest, but that the deed was lost or destroyed and was not recorded. The consideration for the quitclaim deeds was stated to be the consideration paid by C.C. Colvin to John A. Colvin and the vendors acknowledged that John A. Colvin received full payment.
The trial court correctly found that C.C. Colvin and then his heirs exercised full and complete possession of the property from as early as 1900 through the time this litigation was commenced by living on the property, farming it, growing timber, making timber sales, selling sand and gravel, having the property surveyed, marking boundaries, and the like. The trial court also correctly found that the evidence was insufficient to support any possession whatsoever by John A. Colvin or his heirs. These findings are not seriously questioned on appeal.
*865 There is in evidence a timber deed dated in 1899 by which C.C. Colvin sold timber on the subject property. John A. Colvin signed as a witness to the timber deed.
In 1937, a judgment of possession was rendered in the Succession of C.C. Colvin and his wife, and was duly recorded, in which their heirs were recognized as the owners of the "whole interest in and to" the subject property.
In 1950 appellants were specifically told in a conversation with one of the C.C. Colvin heirs that John A. Colvin had sold his interest in the property, the deed was lost, and that they did not own any interest in the property. However, they had earlier knowledge that other heirs of John A. Colvin had quitclaimed their interest, and they were approached to sign papers to get the property "straight."
Subsequently, the heirs of C.C. Colvin partitioned the property, purporting in the recorded instrument to deal with the full interest in the property.
Appellants urge that the possession of their co-owners must be regarded as possession on behalf of all the co-owners of the property, and that such possession did not become adverse to them until they were given actual notice in the 1950 conversation, less than 30 years prior to their asserting their claim to title. Appellants particularly urge that the trial court erred in holding that the ex parte judgment of possession served as notice to them of the adverse nature of the possession of their co-owners.
Particularly applicable to the issues in this case are LSA-C.C. Arts. 3439 and 3478:
LSA-C.C. Art. 3439:
"A co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner.
"Any other precarious possessor, or his universal successor, commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing."
LSA-C.C. Art. 3478:
"A co-owner, or his universal successor, may commence to prescribe when he demonstrates by overt and unambiguous acts sufficient to give notice to his co-owner that he intends to possess the property for himself. The acquisition and recordation of a title from a person other than a co-owner thus may mark the commencement of prescription.
"Any other precarious possessor, or his universal successor, may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself."
These Civil Code articles were adopted by Act 187 of 1982, effective January 1, 1983. The provisions are new, but as noted in the comments thereto, do not change the law. See prior Articles 3512 and 3515.
The well-settled jurisprudential general rule is that an owner in indivision cannot acquire by prescription the rights of his co-owners in the property held in common. Possession by one co-owner is generally considered as being exercised on behalf of all co-owners. It is equally well settled that an exception to the general rule is recognized in those instances where the possessing co-owner gives notice to the other co-owners that he intends to possess as owner adversely and contrary to the common interest. Under such circumstances, one owner in common may prescribe against a co-owner provided such possession be clearly hostile and notice be given thereof. Givens v. Givens, 273 So.2d 863 (La.App. 2d Cir.1973).
Under Civil Code Articles 3439 and 3478 and the jurisprudence, actual notice to other co-owners of the possessing co-owner's intent to possess for himself is not necessary. Actual notice is required in the case of other precarious possessors, but not in the case of co-owners.
In determining whether a particular case falls within the exception rather than *866 the general rule, mere occupancy, use, payment of taxes, and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. However, where a co-owner possesses under a recorded instrument apparently conveying title (even though the purported conveyance is invalid), the recorded instrument, together with the acts of possession, constitutes notice to other co-owners and the possession is then regarded as hostile to the interests of the other co-owners, rebutting the presumption that possession is for the benefit of all co-owners. Givens v. Givens, supra.
Civil Code Article 3478's provision that the acquisition and recordation of a title from a person other than a co-owner may mark the commencement of a prescription is illustrative, not exclusive. Recordation of an instrument translative of title is only one example of overt and unambiguous acts sufficient to give notice to co-owners.
A recorded instrument may constitute notice to co-owners even though it is not translative of title. Thirty years acquisitive prescription is founded upon possession, not a deed translative of title. The function of the recorded instrument is simply to serve as an overt manifestation that a co-owner exclusively possessing is doing so by virtue of his claim to exclusive ownership. It is objective evidence that he possesses adversely to those who may claim to be his co-owners. Dupuis v. Broadhurst, 213 So.2d 528 (La.App. 3d Cir. 1968). In Dupuis, a partition, not translative of title, coupled with active and open possession for 30 years, was held to negate the presumption that the possessing owner was possessing for other co-owners. Likewise, in Minton v. Whitworth, 393 So.2d 294 (La.App. 1st Cir.1980), the language of a recorded partition was held to be a clear indication that the parties thereto considered themselves to be the owners of the full interest in the property and to constitute notice to co-owners that subsequent possession of the property was adverse and hostile to their interests.
A recorded invalid donation was held to constitute adequate notice in Givens, supra, and a simulated sale was given the same effect in Detraz v. Pere, 183 So.2d 401 (La.App. 3d Cir.1966).
It was not error for the trial court to hold that the recorded ex parte judgment of possession which purported to send the C.C. Colvin heirs into possession of the "whole interest" in the subject property was an act of notice to the other record co-owners of the intended adverse possession of the C.C. Colvin heirs. Boyet v. Perryman, 240 La. 339, 123 So.2d 79 (1960), relied on heavily by appellants, is not applicable. That case held only that an ex parte judgment of possession does not purport to be a transfer of title and cannot serve as a basis for 10 years acquisitive prescription. It has no relevancy to the issue of notice of adverse possession as between co-owners and 30-years acquisitive prescription based on adverse possession.
Perhaps more significant than the judgment of possession are the declarations contained in the quitclaim deeds recorded in 1937 and 1938. The declarations serve as notice to the other co-owners that the C.C. Colvin heirs were possessing as owners for themselves and adversely to the John A. Colvin heirs under a lost or destroyed deed from John A. Colvin. This declaration was joined in by John A. Colvin's widow and all of his heirs except the appellants.
There is also evidence that the appellants were aware, prior to the 1950 conversation mentioned previously, of the claim by the C.C. Colvin heirs to full ownership of the property and their exclusive possession as full owners.
The intent of C.C. Colvin and his heirs to possess for themselves was demonstrated by overt and unambiguous acts sufficient to give notice to their co-owners, marking the commencement of acquisitive prescription more than 30 years prior to the commencement of this litigation. These acts included the actual physical acts of possession described earlier in this opinion, *867 the timber deed by C.C. Colvin which was witnessed by John A. Colvin, the recorded declarations contained in the quitclaim deeds, the recitals of the recorded judgment of possession, and communications among the family which indicate an awareness on the part of appellants of their co-owners' intent to possess for themselves, all commencing or occurring more than 30 years ago. The judgment of the district court recognizing appellees' acquisition of the interests of appellants by 30-years acquisitive prescription is correct.
The appellants initially pled the invalidity of the quitclaim deeds on the grounds of lack of or insufficiency of consideration. Although this issue was not addressed in the trial court's reasons for judgment, the judgment rejecting in full appellants' demands for recognition of an ownership interest in the property had the effect of rejecting their claims in this respect. No formal specification of error is directed to this issue, but appellants, in brief, ask that the issue be decided on this appeal, and the plaintiff, in brief, has responded. Suffice it to say that the appellants have failed to demonstrate or establish that the consideration recited in the quitclaim deeds was not accurately stated or sufficient to support the transfers made in acknowledgment of the prior transfer by their ancestor for money consideration and to comply with the vendors' natural obligation to execute the disposition their ancestor and former owner had made. See LSA-C.C. Arts. 1758 and 1759.
For the reasons assigned, the judgment of the district court is affirmed at appellants' costs.
Affirmed.