COX, JUDGE.
hThe unopened succession and unknown heirs or legatees of Wade Williams (“Defendants”) appeal from a summary judgment for the plaintiff, Creek Management, L.L.C. (“Creek”), which resulted in Creek being granted possession of all interests in the property in dispute. The trial court, addressing Creek’s possessory action, found that Creek had terminated any precarious possession by filing an affidavit of possession, and from that day had possessed the property for itself, as owner, against all other co-owners. Because questions of material fact remain regarding the actions of Creek in establishing possession, we respectfully reverse the trial court’s ruling and remand for further proceedings.
FACTS
This suit began on June 11, 2015, when Creek filed a petition for possessory action which stated that it was in possession, as owner, of an approximately 40-acre tract of land in the southern part of Caddo Parish. The petition alleged that Creek acquired interests in the property by deeds filed in the records of Caddo Parish and that the property appeared to have been abandoned prior to the sales of the interests. It further stated that the sellers of the deeds did not know any other owners or heirs. The petition claimed that an affidavit of possession was filed by Creek on June 9, 2014, which named anyone with a possible ownership interest, and declared that Creek intended the affidavit to serve as notice of hostile possession against them. The affidavit listed various actions that Creek took which were intended to demonstrate possession of the property. On the basis of this alleged uninterrupted hostile possession and the filing of the affidavit, Creek lgdaimed that there had been a disturbance in possession in law under La. C.C.P. art. 3659. As a result, Creek asked that the court appoint an attorney to represent the absentee defendants and that Creek be recognized as possessor of the property under La. C.C.P. art. 3658.
The affidavit of possession referenced in the petition was filed on June 9, 2014, and states that Creek purchased an interest in the property in dispute on June 6, 2014. It elaborates that “it has been, and is the intention of Creek Management, LLC to own, and to possess as owner, the entirety of the subject property beginning on June 6, 2014, which possession is hostile against any other persons or entities who claim to have a co-ownership interest in the subject tract.” The affidavit goes on to state various acts of possession of the property including: cleaning the property of garbage piles, cutting trails, posting “no trespass” signs, repairing fences, placing a gate and lock to restrict access, destroying old deer hunting equipment, and attempting to restore electricity to and repair an old structure on the property. It also lists 11 unopened successions and/or persons whom Creek intended to possess against and states that it is intended to serve as notice *1196 of such with the goal of acquiring title to 100% interest in the property by adverse possession.
After the trial court appointed an attorney to represent Defendants, an answer and' set of requests for admissions of fact were filed. The answer asserted that all Defendants were absentees from Louisiana and that merely filing the affidavit in the public records was not sufficient notice.
In response to the request for admissions, Creek admitted that it had checked the Caddo Parish Tax Assessor’s records regarding the property, Land they were aware of the mailing address for Beatrice Wesson (“Wesson”), a representative of a co-owner of the property. In addition, Creek admitted that it never sent any correspondence to Beatrice Wesson via certified mail, and had placed notice in a Caddo Parish publication to notify the public of the hostile possession of the property.
On February 10, 2016, after Defendants produced substantial records of their ownership and payment of taxes for the property, they filed a motion for summary judgment. The motion argued that Creek’s failure to publish notice of its hostile possession in a Caddo Parish newspaper and' its failure to send a letter by certified mail to Wesson made any actions it took insufficient to take sole possession of the property. Attached was an affidavit from Leatrice Eagleson[1] (“First Eagleson Affidavit”) stating that she did not receive notice of the adverse possession until after the suit was filed and that she or Wesson had responded to inquiries about oil, gas, and timber on the property since 1956. Included in the Defendants’ production were inquiries about mineral interests addressed to Wesson and dated June 10, 2014, and March 18, 2015, dates within the time that Creek claimed exclusive possession. The affidavit also states that the property was acquired by Eagleson’s ancestors in 1926 and that the Williams family .(Eagleson’s mother’s family) had paid property taxes on the property since 1956.[2] Another affidavit from the Director of Land Ownership at the Caddo Parish Tax Assessor’s Office (“Tax Assessor’s Affidavit”) was also attached and Instated that since 1956, the property was assessed to “Williams, Wade, et al c/o Beatrice Wesson, 5495 WHITFIELD DR. TROY, MI 48098-5182.”
Creek filed a cross-motion for summary judgment on March 24, 2016, asserting that there were no issues of material fact and the requirements of La. C.C.P. art. 3658 had been met as a matter of law. In its memorandum, Creek argued, ‘With no information available for plaintiff to find the identities or whereabouts of the defendants, plaintiff went above and beyond what the law requires and filed an affidavit of possession which could not have stated the intent of the plaintiff any more clearly.” [3] Attached to its motion was an affidavit from Ashley Powers (“First Powers Affidavit”), a member and manager of Creek, stating that a letter was sent to Wesson[4] on June 9, 2014, to notify her of Creek’s possession of the property. That letter, attached to the motion, contained a statement that Creek was possessing *1197 against Wesson’s interest and offered to buy her approximately one-tenth interest for $2,000.00. The letter was signed by Henry W. Bethard, Y, as a manager of Creek.[5] Powers also averred that Signora Darnell, a neighboring property owner, called Powers between June 9 and September 27, 2014, and stated that she'had been, in contact with the landowner and that the landowner didn’t want any more “no-trespassing” signs to be put up. When asked for the landowner’s contact information, Darnell allegedly refused to give, out the name or information, but agreed to give Powers’ information tojjthe landowner. Powers also stated that further contact with Darnell occurred on September 27, 2014, when Darnell saw Powers on the property and informed him that “the owner of the property” had told her the “no-trespassing” signs needed to be taken down. Powers concluded that Darnell had been in contact with Beatrice Wesson, but, at the time of the affidavit, Powers stated that it was obvious that Darnell had actually been in contact with Eagleson.
In response to that motion, Defendants filed a supplemental memorandum'which re-asserted their original arguments but included a supplemental affidavit from Ea-gleson (“Second Eagleson Affidavit”) which states that she received a call in late spring or early summer from Darnell indicating that a chain had been placed on her family’s property with a “No Trespassing” sign, but Darnell did not know who put them up.[6] The affidavit also states that Eagleson visited the property in August of 2015 and found a chain with a “No Trespassing” sign attached, but that there was no identification of who put the sign or chain there. Signora Darnell also executed an attached affidavit (“Darnell Affidavit”) stating that when she approached people who were working on the property, they simply replied that “they owned the property,” and there was nothing else to identify them. She also averred that at no time did they ask her how to reach Wesson or anyone else by phone.
Responding to Defendants’ supplemental memorandum, Creek filed another memorandum in opposition to the motion for summary .judgment | ^arguing that it did provide actual notice. It stated that actual notice was achieved by the letter and that whether it was sent via certified mail was irrelevant. It further asserted that even though sending notice by certified mail was not a requirement, an attached certified return receipt showed that the Eaglesons do receive mail at the address where the plaintiffs letter was mailed.[7] Attached to this memorandum is a second affidavit by Powers (“Second Powers Affidavit”) executed on July 1, 2016, which is substantially the same as the first, except that it adds a statement that the Eagelsons receive mail at'Wesson’s address as evidenced by an attached certified mail return receipt.
On July 14, 2016, a third affidavit, from Eagleson (“Third Eagleson Affidavit”) was filed in support of Defendants’ motion for summary judgment. It states that when she visited the property on August 2, 2014, she did not see a telephone number on the “no-trespassing” sign posted on the entrance to her property and that had she *1198 seen a telephone number she would have called it.
On July 18, 2016, a hearing was held on the motions for summary judgment. At the hearing, Creek stated that the uncontested facts were that the plaintiff had acquired an interest in the piece of property, the co-owners could not be found, Creek filed the deeds and an affidavit, and a year after the purchase and filing without interruption, the plaintiff filed, the suit. Creek stated that there was a genuine issue of material fact about whether actual notice was given that would defeat Defendants’ motion for summary|7 judgment because Creek claimed to have sent letters to Wesson’s address and a neighbor talked to one of the defendants about Creek’s possession. Creek argued that its acts of possession along with the filing of the affidavit of possession provided sufficient notice to co-owners.
Defendants stated that Creek argued that actual notice was not required where there is no information to determine the address of co-owners. Defendants asserted that the negative implication is that where information is available to determine the address of co-owners, then actual notice would be required. Defendants pointed out the Tax Assessor’s Affidavit demonstrated the availability of the address and that Creek failed to send its alleged letter by certified mail, a method of delivery which would have avoided the issue completely. Defendants also argued that the acts of possession by the plaintiff were not overt and unambiguous because the plaintiff never identified itself. After arguments, the court issued an oral ruling in favor of Creek, granting the plaintiffs summary judgment motion and denying the Defendants’ motion.
On July 27, 2016, a written “Judgment Granting Possession” was filed. The judgment denied Defendants’ motion for summary judgment and granted Creek’s motion, stating, “The plaintiff terminated any precarious possession on June 9, 2014, being the time of the filing of the affidavit of possession, and began, on that day, possessing for itself as owner.” As a result, Creek was granted possession of all interests in the property in dispute and, as possessor, was thereafter considered provisional owner pending the establishment of the rights of the true owner under La. C.C. art. 3423. Defendants appealed from that judgment.
I «SUMMARY JUDGMENT
A de novo standard of review is required when an appellate court considers rulings on motions for summary judgment, and the appellate court uses the same criteria that governed the district court’s determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith, 15-0530 (La. 10/14/15), 180 So.3d 1238, 1243. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966. See Catahoula Parish Sch. Bd. v. Louisiana Machinery Rentals, LLC, 12-2504 (La. 10/15/2013), 124 So.3d 1065, 1071.
The burden of proof on a summary judgment motion remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there *1199 is no genuine issue of material fact and summary judgment should be granted. See La. C.C.P. art. 966(D)(1).
LAW
It is a well-established rule that an owner in indivisión cannot acquire by prescription the rights of co-owners, and possession by one co-owner is generally considered as being exercised on behalf of all co-owners. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); Hill v. Dees, 188 La. 708, 178 So. 250 (1937); Dew v. Hammett, 150 La. 1094, 91 So. 523 (1922); Cockerham v. Cockerham, 44,578 (La.App. 2 Cir. 8/19/09), 16 So.3d 1264.
The well-settled exception to this rule is reflected in La. C.C. art. 3439, entitled “Termination of precarious possession,” which provides that “a co-owner ... commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner.” La. C.C. art. 3478 contains a similar requirement, stating that a co-owner “may commence to prescribe when he demonstrates by overt and unambiguous acts sufficient to give notice to his co-owner that he intends to possess the property for himself.” Art. 3478 also provides that “the recordation of a title from a person other than a co-owner thus may mark the commencement of prescription.” (Emphasis added). When a possessing co-owner gives notice to the other co-owners that he intends to possess as owner adversely and contrary to the common interest, the owner giving notice may prescribe against other co-owners provided the possession is clearly hostile. Franks Petroleum, Inc. v. Babineaux, 446 So.2d 862 (La. App. 2 Cir. 1984); Givens v. Givens, 273 So.2d 863 (La. App. 2 Cir. 1973); Cockerham, supra.
When analyzing whether a particular case falls within the exception rather than the general rule, this court has found that mere occupancy, use, payment of taxes, and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. However, this court has also noted that actual notice to co-owners of the possessing co-owner’s | ^intent to possess for himself is not necessary.[8] Franks Petroleum, Inc., supra; Givens v. Givens, supra. A recorded instrument purportedly conveying an interest in property will not always constitute notice. It must not be read in isolation, but rather considered along with acts of physical possession. Otherwise, Art. 3478 would use the words “shall mark” instead of “may mark” when noting the effect of an instrument on the commencement of prescription. Cockerham v. Cockerham, supra.
Wfliere a co-owner possesses under a recorded instrument apparently conveying title (even if it is invalid), the instrument, combined with acts of corporeal possession, may constitute notice to other co-owners of hostile possession, thereby rebutting the presumption of possession for the benefit of all. Givens v. Givens, supra.
DISCUSSION
After reviewing the record that has been developed thus far, we find that genuine issues of material fact remain, and, therefore, respectfully reverse the granting of summary judgment and remand for further proceedings. The conflicting affidavits regarding the letter to Wesson, knowledge of physical possession, and identifying information on the signs create questions of fact which must be answered to determine whether Creek’s hostile in- *1200 tent was sufficiently “overt and unambiguous” so as to give notice to the other co-owners. ■
The Louisiana Civil Code does not, as Creek points out, explicitly require actual notice to other co-owners of one co-owner’s intent to possess for himself, hostilely against the other co-owners. La. C.C. arts. 3439, 3478. Rather, it requires that the co-owner demonstrate that intent “by overt and unambiguous acts sufficient to give notice to his co-owner,” La. C.C. art. 3439. As a result, the inquiry turns on whether the actions taken by Creek may be deemed overt and unambiguous enough to give notice to fellow co-owners.
Creek points to two of this Court’s opinions, Franks Petroleum, Inc. and Cocker-ham, for support that its filing of an “Affidavit of Possession,” along with certain acts of physical possession on the property, is sufficient to satisfy the standard as a matter of law. Both cases cite Civil Code Articles 3439 and 3478 for the proposition that actual notice is not required between co-owners. They also go on to state that, a co-owner’s possession under a recorded instrument apparently conveying title (even if not effective), together with acts of possession, constitutes notice to other co-owners of hostile possession. We will examine each case in turn.
In Franks Petroleum, Inc., supra, this Court found no error in the trial court’s judgment that a combination of recorded documents and physical acts of possession were sufficient evidence to show notice to other co-owners. Those documents included a judgment of possession which -transferred a “whole interest in and to” the subject property to the heirs of C.C. Col-vin, one of the two brothers who originally owned the- property. In addition, two recorded quitclaim deeds from the widow of the other brother and all of.his children except to litigants stated that C.C. Colvin had bought his brother’s interest in the property, but the. deed was lost or destroyed and not recorded.. Based on the evidence of the deeds and judgment of I ^possession, along with acts of possession including living on the property, farming it, growing timber, selling timber, sand, and gravel, having the property surveyed, and more, this Court determined that it was not error for the trail court to have issued a judgment finding that the acts were “sufficiently overt and unambiguous” as to give notice to co-owners. It is important to note that the opinion merely found no manifest error based on the evidence from a full trial on the merits.
In Cockerham, supra, this Court addressed the issue of the effects of recorded documents and acts of possession in a judgment setting forth property interests and finding that acquisitive prescription had not accrued. A full trial and judgment resulted in a finding that an invalid deed alone did not give notice to co-owners,[9] and even if it did,' it was not followed by acts consistent with adverse possession. This Court noted that the grantor on the invalid deed had no interest in the property to convey, and the majority of the jurisprudence involved cases where the grantor or donor “had some actual or future ownership interest that they were attempting to convey.” A review of the trial testimony also revealed -that the majority of the family still considered the subject property as collectively owned and not the property of the relative who had moved onto it with his family. Based on the evidence, this Court found no manifest error in the trial court’s judgment finding no prescription had oc *1201 curred and setting out respective ownership interests.
In both Franks Petroleum, Inc. and Cockerham, the recorded instruments relied upon for notice were deeds or partitions purporting toj 13 transfer property. Although both cases agreed that the validity of the deeds was not at issue, neither case went so far as to say that any recorded instrument could combine with acts of physical possession to constitute notice. The statement that “a recorded instrument may constitute notice to co-owners even though it is not translative of title,” does not appear to have been extended by any court to an instance where a co-owner has filed an affidavit of possession to show hostile possession of a co-owned property. Instead, the emphasis in the case law appears to be on the collection of recorded instruments which evidence an intent to buy or receive all outstanding interests of co-owners.[10] In addition, both Franks Petroleum, Inc. and Cockerham had a full evidentiary hearing where all issues were developed prior to a ruling being made by the court.
Looking to the evidence in this case, Creek listed various acts of physical possession in its petition including clearing brush, destroying old deer hunting equipment, placing no-trespassing and posted signs, and placing a gate and sign on the property entrance to restrict access. Although those actions do not appear to be directly controverted, they fall into the category of “mere occupancy, use, payment of taxes, and other acts of possession” that this court has found to be insufficient to constitute notice to other co-owners. As such, the crux of this case revolves around the affidavit of possession and the letter which Creek allegedly sent.
■ In determining the effect of the affidavit of possession, it is worth noting that Creek claimed to file it because “with no information available! 14 for [Creek] to find the identities or whereabouts of the defendants, [Creek] went above and beyond what the law requires and -filed an affidavit.” Creek leveled this argument in its motion for summary judgment despite having earlier admitted in its responses to requests for admission that it had checked the Caddo Parish Tax Assessor’s records and was aware of the mailing address for Beatrice Wesson. Although the Civil Code does not require actual notice in the case of co-owners, it does require actions that are “overt and unambiguous” enough to give notice to co-owners when their address and contact information is known. This is not an instance where, as has been advanced by Creek, Defendants could not be located, so it was easier to file the affidavit. Instead, the record shows that Creek knew the address of the co-owner and may or may not have sent a letter to that co-owner. Given the facts of this case, we are unable to declare that Creek’s actions were sufficiently “overt and unambiguous” as a matter of law.
There is also a clear dispute regarding whether the letter was sent or received. The Powers Affidavit claims that it was sent to the address at which the Eaglesons received mail, but the Second Eagleson Affidavit claims that the letter was never received. Creek even argued that there was a material dispute regarding the letter at oral arguments. As such, there is a material question of fact regarding the letter.
*1202 Creek relies upon its affidavit of possession and acts of physical possession to satisfy the' test where a recorded instrument translative of title combined with physical acts of possession can constitute notice. We find that the record does not contain sufficient undisputed facts to merit summary judgment. The affidavit of possession is not an instrument translative of title |1fias in the other cases cited. This Court is unaware of any similar case where an affidavit of possession has been used in this way. The record in this case does not contain sufficient evidence to find that Creek’s actions were sufficiently overt and unambiguous to constitute notice to the co-owners.
CONCLUSION
After a review of the record, we find that there are genuine issues of material fact regarding whether Creek Management, L.L.C.’s actions were sufficiently overt and unambiguous to constitute notice to the other co-owners. There is a dispute regarding the signage that Creek posted around the property and whether it sent a letter to Wesson. In addition, the affidavit of possession relied upon does not, alone, constitute notice to the co-owners. For these reasons, we respectfully reverse the trial court’s grant of summary judgment and remand the case for further proceedings. Costs are assessed to the appellee, Creek Management, L.L.C.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before WILLIAMS, DREW, STONE, COX and BLEICH, JJ.
Rehearing denied.

. Leatrice Eagleson ("Eagleson”) is the daughter of Beatrice Wesson.

.' Defendants claim they paid property taxes on the property for all years except for 2014, when they state that Creek paid the taxes before Eagleson did.

. Creek asserted this argument despite its answer to Defendants’ request for admissions which admitted that it had prior knowledge of ' Wesson’s name and address.

. The Second Powers Affidavit appears' to show that Eagleson receives mail at Wesson’s address.

. Henry W. Bethard, V, is the attorney of record for Creek in this case,

. The affidavit does not specify the year in which this phone call occurred, The affidavit was executed on April 23, 2016.

.It does not appear, nor is it asserted, that the certified mail receipt shows receipt of the June 9, 2014, letter from Creek to Wesson. The certified mail receipt is addressed to Wesson and appears to be signed by "William Eagleson,” but it is not dated.

. This rule appears to be drawn from the differences between the provisions of La. C.C. arts. 3439 and 3478 as they apply to co-owners versus other precarious possessors.

. This Court found that the grantee of the deed "should have known that [tl}e grantor] did not own the property which he was attempting to convey” because of prior business dealings, and the grantee was, therefore, in bad faith.

. See Franks Petroleum, Inc., supra (a judgment of possession along with quitclaim deeds from almost all co-owners was sufficient); Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963) (a brother and heir of decedent acquired quitclaim deed from widow in addition to interest from succession to give notice).