471 So.2d 904 (1985)
Helen G. HEADRICK, et al, Appellants,
v.
Rosa Hewitt LEE, et al, Appellees.
No. 17022-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*905 B.J. Woods, Shreveport, for appellants.
Gamble & Sledge by Claude R. Sledge, Mansfield, for appellees.
Before HALL, C.J., and JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Plaintiff-appellants, Helen G. Headrick, Oleta H. Horton, Aline H. Allison, H.C. Headrick, Chrystal Headrick Holmes, Patricia H. Dailey, Melba D. Headrick, Nancy H. Moody, Linda H. Johnson, Louisiana Baptist Foundation, Inc. and Margaruite W. Headrick, (hereinafter collectively referred to as "Headrick" or "Headricks"), originally moved to appeal devolutively from a lower court judgment in favor of Rosa Hewitt Lee, Twyllia Hewitt Sonnier, Barney Weldon Hewitt, Robin Hewitt Smith, Seutie Marie Hewitt Woods, Charlie Wallace Hewitt and Helen Ruth Cryar Sullivan, (hereinafter collectively referred to as "Hewitt" or "Hewitts"), rejecting their demand to be recognized and maintained in possession of a 560 acre tract of land in DeSoto Parish. The devolutive appeal was granted and made returnable to this court. Subsequently, appellees moved in the lower court to dismiss the appeal for appellants' failure to pay fees and costs related to the appeal. After a hearing, the motion was granted and a judgment was signed dismissing the appeal. Appellants then appealed the dismissal. Appellants' brief was filed with this court one day late and appellees filed a motion requesting us to dismiss the appeal, which we refused to do. The record in its entirety is now before us and both sides have briefed the lower court's decisions on the motion to dismiss and on the merits. Since the questions involved in these appeals are intimately connected and since the interest and convenience of all parties would be served thereby, we think *906 the appeals should be heard and disposed of at one and the same hearing. For this purpose, we have ordered the appeals consolidated. We know of no law or principle, and have been referred to none, which forbids this method of procedure. Nor can we conceive of any injury that appellees may suffer by reason of the consideration and disposition by this court of both appeals simultaneously. Louque v. Hercules Oil Co., 170 La. 355, 127 So. 866 (1929); Chaudoir v. Chaudoir, 430 So.2d 280 (La.App. 3d Cir.1983). For the reasons expressed, we reverse the judgment that dismissed the appeal, but affirm the trial court's judgment on the merits.

ISSUE NO. 1: Motion to Dismiss
On February 23, 1984, judgment was rendered on the merits rejecting the plaintiffs' demands. A motion and order for devolutive appeal was signed April 16, 1984 and filed April 17, 1984. The appeal was made returnable June 11, 1984 and all parties were notified of this order. After being notified by the clerk's office of the estimated costs, the appellants failed to post their cost bond until a motion to dismiss the appeal was filed by the appellees on August 27, 1984. After the filing of this motion, some 81 days after the return date, appellants attempted to post their cost bond. After a contradictory hearing, the trial court, pursuant to La.C.C.P. art. 2126E(1), dismissed the appeal. In its written reasons for judgment, the trial court stated that appellants' failure to post costs, post bond or take any steps whatsoever in furtherance of the appeal until 81 days after the return date and then only after a formal motion to dismiss the appeal had been filed, was clearly unjustified and constituted a valid basis for granting the motion to dismiss. Plaintiffs appealed this dismissal.
Appellants contend that there was adequate justification for the delay in the payment of costs and that dismissal of the appeal was too severe a penalty. Appellants' counsel stated in his argument, which was not objected to, that on the day the appeal was granted he tendered payment of costs to date to the clerk who refused the payment and advised that a bill would be forwarded. Thereafter, when the costs bill was received by appellants' attorney, he forwarded it to his clients. The resulting delay in payment was due to the large number of clients and the obvious problems inherent in obtaining each client's share of the costs. Appellants further argue that the fact the costs were paid prior to the hearing on the motion to dismiss evidenced their intention not to abandon.

La.C.C.P. art. 2126 provides that when an appellant fails to pay the estimated cost of the appeal or the difference between the estimated costs and the actual costs within the time specified, the trial judge may grant an extension of time to pay the costs, impose a fine not to exceed $100, or dismiss the appeal.[1] These alternatives were designed to provide for flexibility in penalties in recognition of the public policy of this state that appeals are favored and should be maintained wherever possible. U.S. Fire Insurance Co. v. Swann, 424 So.2d 240 (La.1982). Of course, imposition of some penalty is necessary to ensure prompt payment of costs and thus to promote prompt and efficient handling of appeals. However, since maintainance of appeals is always favored, the extremely harsh penalty of dismissal should be reserved for those situations where the appeal has clearly been abandoned or the litigant refuses or fails without justification to pay costs or otherwise proceed with the appeal. Perkins v. Coker, 404 So.2d 902 (La.1981); Williams v. Aetna Ins. Co., 368 So.2d 1252 (La.App. 4th Cir.1979).
At most, this case is one of simple tardiness, not to be condoned, but which should be punished by a lesser penalty than *907 that of dismissal. Here there is some justification for the tardiness. Had the clerk taken time to calculate or estimate the costs due, they more than likely would have been paid on the day the appeal was granted. Refusal of the clerk of the trial court to accept tendered costs is tantamount to payment under certain circumstances. Cobb v. Bergeron, 244 So.2d 322 (La.App. 1st Cir.1970). While the circumstances surrounding the tender cannot be ascertained with certainty because of a lack of competent evidence, we do give the unobjected to argument some weight in our decision. It is also significant that the costs were paid (albeit 81 days after the return date) prior to a hearing on the motion to dismiss. The tender, coupled with the actual payment, certainly constituted a meaningful manifestation of the litigants' intention not to abandon the appeal.
Under the circumstances of this case, and reconciling the intent of La.C.C.P. art. 2126 with the longstanding public policy favoring maintainance of appeals, we conclude that dismissal of this appeal is too harsh a penalty. The appeal is reinstated. However, since the imposition of a more appropriate penalty falls within the wide discretion of the trial court, the motion which led to the dismissal is remanded for imposition of an appropriate penalty.
For the reasons stated above, and for the sake of judicial economy, we now turn our attention to the appeal on the merits.

ISSUE NO. 2: Possessory Action
All parties to this litigation, with the exception of the Louisiana Baptist Foundation, Inc., are the descendants of A.S. Headrick, who once owned the 560 acres in question and is the ancestor in title of all parties hereto. The Louisiana Baptist Foundation, Inc. received its interest by donation mortis causa from Victor Headrick. A.S. Headrick had three children, A.L. Headrick, George Headrick and Sally Headrick Hewitt. George Headrick died without having married and without issue. The plaintiffs are the descendants of A.L. Headrick and the defendants are the descendants of Sally Headrick Hewitt. The plaintiffs claim to have possessed the property adversely to the defendants since 1910, through the possession of A.L. Headrick, his wife, Robbie Headrick, and their son, H.C. Headrick and his wife, Blanche Headrick. The evidence reveals that these members of the A.L. Headrick family have continuously lived on the property since 1910, fencing it, growing crops, raising cattle, cutting timber and performing other various acts of possession. At the time of trial, H.C. Headrick and his family were still living on the property. Although there is no written evidence of any such agreement, H.C. Headrick testified that it was "just understood" among the Headricks that he was possessing the property for the Headrick side of the family. The Hewitts, all residents of Texas, have had nothing to do with the property from 1910 until the events in the early 1980's which precipitated this litigation. The Headricks have paid all the taxes on the property and according to the testimony of Blanche Headrick, H.C. Headrick and Helen Headrick, they have always considered themselves the owners of the property.
However, in the early 1950's, the Headricks attempted to get the members of the Hewitt family to quit claim their interests in the property to the Headricks. Although one member of the Hewitt family, A.C. Hewitt, did quit claim his interest to the Headricks, the other members of the Hewitt family refused to do so. According to the testimony of Helen Sullivan, a grandaughter of Sally Headrick Hewitt, A.C. Hewitt's release of his interest in the property to the Headricks caused a fight in the Hewitt family.
The events which precipitated this litigation began when Texas Oil & Gas Company attempted to lease 160 acres of the total tract. A local attorney and title examiner, David B. Means, who examined title to the tract, could find no instrument of record transferring title from A.S. Headrick to A.L. Headrick. He requested that the land men for Texas Oil & Gas Company provide him with information that A.L. Headrick was the only child of A.S. Headrick. Their *908 subsequent inquiry revealed that there were in fact three children and that Sally Headrick Hewitt had descendants who were still living. Pursuant to this information, Texas Oil & Gas proceeded to contact the Hewitts and obtained their signatures on leases. As a result of these contacts, an affidavit of heirship was filed in the conveyance records of DeSoto Parish, asserting the Hewitts' ownership interest in the 160 acres leased by Texas Oil & Gas.
Upon learning of the recordation of the affidavit of heirship and seeing that the division order covering the leased property listed the Hewitts as owners in indivision of the property, the Headricks filed this possessory action. They prayed that their right of possession be recognized and maintained, and that the Hewitts be ordered to assert any claims of ownership within 60 days of the judgment recognizing their right to possession. After trial on the merits, the lower court granted judgment in favor of the Hewitts, holding that the Headricks were precarious possessors who had not performed overt and unambiguous acts sufficient to give notice to their co-owners that they intended to possess the property for themselves. The Headricks have appealed, claiming the trial court was clearly wrong in holding that they had failed to perform sufficient acts to give notice to their co-owners that they intended to possess the property adversely to them.
Particularly applicable to the issues in this case are La.C.C. art. 3439 and 3478:
LSA-C.C. Art. 3439
A co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner.
Any other precarious possessor, or his universal successor, commences to possess for himself when he gives actual notice of this intent to the person on whose behalf he is possessing.
LSA-C.C. Art. 3478
A co-owner, or his universal successor, may commence to prescribe when he demonstrates by overt and unambiguous acts sufficient to give notice to his co-owner that he intends to possess the property for himself. The acquisition and recordation of a title from a person other than a co-owner thus may mark the commencement of prescription.
Any other precarious possessor, or his universal successor, may commence to prescribe when he gives actual notice to the person on whose behalf he is possessing that he intends to possess for himself.
These civil code articles were adopted by Act 187 of 1982, effective January 1, 1983. The provisions are new, but as noted in the comments thereto, do not change the law. See prior articles 3512 and 3515 (1870).
The jurisprudential general rule is that an owner in indivision cannot acquire by prescription the rights of his co-owners in the property held in common. Possession by one co-owner is generally considered as being exercised on behalf of all co-owners. Arnold v. Sun Oil Company, 218 La. 50, 48 So.2d 369 (1950); Hill v. Dees, 188 La. 708, 178 So. 250 (1937); Dew v. Hammett, 150 La. 1094, 91 So. 523 (1922); Simon v. Richard, 42 La.Ann. 842, 8 So. 629 (1890); Franks Petroleum, Inc. v. Babineaux, 446 So.2d 862 (La.App. 2d Cir.1984); Givens v. Givens, 273 So.2d 863 (La.App. 2d Cir.1973).
An exception to the foregoing general rule is recognized in those instances wherein the adversely possessing co-owner gives notice to the other co-owners that he intends to possess contrary to the common interest. Under such circumstances one owner in common may prescribe against a party owning in indivision with him provided such possession be clearly hostile and notice be given thereof. Arnold v. Sun Oil Company, supra; Lyles v. Pitts, 145 La. 650, 82 So. 735 (1919); Ethredge v. Watts, 137 La. 686, 69 So. 95 (1915); Franks Petroleum, Inc. v. Babineaux, supra; Givens v. Givens, supra.
Under civil code articles 3439 and 3478 and the jurisprudence, actual notice to *909 other co-owners of the possessing co-owner's intent to possess for himself is not necessary. Actual notice is required in the case of other precarious possessors but not in the case of co-owners. A co-owner is only required to perform overt and unambiguous acts which are sufficient to give notice to his co-owner that he intends to possess for himself.
In determining whether a particular case falls within the exception rather than the general rule, mere occupancy, use, payment of taxes, and similar acts of possession will not suffice to constitute notice of adverse possession to an owner in common. Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481 (1957); Alba v. Smith, 228 La. 207, 81 So.2d 863 (1955); Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953); Franks Petroleum, Inc. v. Babineaux, supra; Givens v. Givens, supra.
We agree with the lower court that the Headricks failed to demonstrate an intent to possess for themselves by overt and unambiguous acts sufficient to give notice to their co-owners. Their actions consisted of only occupancy, use and other acts of possession by the families of A.L. Headrick and H.C. Headrick, and the payment of taxes. Such actions, without more, are not sufficient to constitute notice of adverse possession to their co-owners. Perhaps more significant than their lack of overt and unambiguous acts, was the attempt by the Headricks in the early 1950's to get the Hewitts to quit claim their interest in the property over to them. The declarations in the quit claim deed, which was executed by only one member of the Hewitt family, show that the Headricks were informed of and recognized that the Hewitts had an interest in the tract. This recognition of the Hewitts' interest is clear, despite the Headricks' claim that the quit claim deed was merely an attempt to "clear up the title." Subsequent to the attempted acquisition by quit claim deed of the Hewitt interest in the land, the Headricks still did not perform overt and unambiguous acts sufficient to give notice to their co-owners that they were possessing adversely to them.
Thus, this case falls squarely within the general rule and the trial court's finding that the Headricks were precarious possessors is not clearly wrong. Having thus been categorized, the Headricks are precluded from bringing the possessory action against those for whom they possess, namely, the Hewitts. See La.C.C. art. 3440; Ramsey v. Pace, 467 So.2d 1202 (La. App. 2d Cir.1985).
We find no error in the lower court's ruling on the merits of the case.
Accordingly, for the reasons expressed, the judgment of the lower court dismissing appellants' appeal is reversed and the motion to dismiss is remanded to the trial court for imposition of a less severe but appropriate penalty in accordance with La. C.C.P. art. 2126; the judgment of the lower court on the merits rejecting plaintiffs' demands is affirmed. Costs of appeal are assessed one half to the Headricks and one half to the Hewitts.
REVERSED IN PART AND REMANDED; AFFIRMED IN PART.
NOTES
[1] La.C.C.P. art. 2126(E) has been amended to remove the fine provision. The alternatives available now are the granting of a 10 day extension within which costs must be paid in full, in default of which the appeal is dismissed, or dismiss the appeal on grounds of abandonment.