737 So.2d 749 (1998)
SUCCESSION OF Muriel Vernet MOORE.
Nos. 97-CA-1668, 97-CA-1669.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1998.
Rehearing Denied February 17, 1999.
*751 Miles G. Trapolin, Trapolin Law Firm, New Orleans, for Appellant Robert J. Landry.
Eugene P. Redmann, New Orleans, for Appellants William and May Gibbens.
Before KLEES and BYRNES, JJ., and JAMES C. GULOTTA, J. Pro Tem.
BYRNES, Judge.
This consolidated suit involves six cases concerning a dispute over ownership of heirlooms of the family of Jim Bowie and his brother Rezin Bowie. Involved are assets claimed in the successions of Muriel Vernet Moore and her father, John Seyborne Moore. Robert Landry, as the executor of the Succession of Muriel Vernet Moore, and administrator of the Succession of John Seyborne Moore, appeals various judgments, and William Gibbens, Jr., the executor in one of the succession cases, and his wife May Gibbens also appeal. We affirm in part as amended and remand.
For several years, the Gibbens brought meals, visited daily and helped in taking care of Mr. Gibbens' aunt, Muriel Moore, who lived on Short Street. In 1985 Muriel Moore was placed in a nursing home, and she died on March 11, 1991. She had two wills, an olographic will dated May 1, 1982 and a statutory will dated August 21, 1979.
The following suits were filed concerning the succession of Muriel Moore and the succession of her father, John Seyborne Moore.

SUCCESSION OF MURIEL VERNET MOORE

Case No. 91-9131
William Gibbens probated Muriel Moore's 1982 olographic will, was appointed dative testamentary executor, and obtained a Judgment of Possession in the Succession of Muriel Vernet Moore Case No. 91-9131 in June 1991. In that case Gibbens posted a $35,000 surety bond from Western Surety Company.

Case No. 91-11434
Without knowledge of that case, Landry probated Muriel Moore's 1979 statutory will in the Succession of Muriel Vernet Moore in Case No. 91-11434. These two successions suits were consolidated.
Landry filed motions to traverse the Descriptive List of Assets which Gibbens had filed. Landry also filed motions for accounting to recover Muriel Moore's assets. The Gibbens alleged that Muriel Moore gave the contents of her house and certain financial assets to the Gibbens.

Case No. 94-7075
After Landry was named testamentary executor, Landry sued the Gibbens and Western Surety Company for damages associated with the alleged theft of the Bowie heirlooms and financial assets in Case No. 94-7075 on May 5, 1994.

*752 Case No. 91-18891

John S. Burk, as the administrator of the Succession of Gwendolyn Moore Burk, Muriel Moore's sister, also filed suit against the Gibbens to recover the family heirlooms, partition the artifacts, and to recover damages in Case No. 91-18891.
The matters were consolidated, and a trial on the merits was held from June 24-July 1, 1996. In the Reasons for Judgment entered on August 26, 1996, the trial court found that Muriel Moore had not given anything to the Gibbens and ordered them to return the assets to Muriel Moore's succession.
On September 4, 1996, the trial court dismissed as moot Case No. 91-18891, John S. Burk, as the administrator of the Succession of Gwendolyn Moore Burk versus Mr. and Mrs. William B. Gibbens. This judgment was not appealed.
On the same date of September 4, 1996, the trial court also dismissed as moot Case No. 94-7075 in which Landry, as the executor, filed suit against the Gibbens and Western Surety Company. Upon granting Landry's Motion for New Trial, the trial court amended the judgment to hold that the suit was not dismissed for the claims for which Western Surety may be liable as surety for the actions or inactions of William Gibbens, Jr. while acting as the executor of the Succession of Muriel Vernet Moore. This judgment was not appealed.
In its judgment of October 8, 1996, the trial court ordered the Gibbens to return all of the assets owned by the late Muriel Vernet Moore, or which she had an interest in Case Nos. 91-9131 and 91-11434. The Gibbens and Landry appealed.
Landry also filed a Motion for Partial New Trial, requesting that the trial court enter a judgment against the Gibbens for a specific monetary amount. On November 4, 1996, the trial court granted a partial new trial and entered a new judgment on January 6, 1997 in Case Nos. 91-9131 c/w 91-11434 against the Gibbens in the amount of $218,657.90 plus interest. The Gibbens and Landry appealed this judgment.

SUCCESSION OF JOHN SEYBORNE MOORE

Case No. 94-6060
The Gibbens filed suit against John S. Burk and Landry as executors of the Succession of John Seyborne Moore in Case No. 94-6060.

Case No. 93-1857
Meanwhile Landry opened the succession of Muriel Moore's father in Case No. 93-1857, Succession of John Seyborne Moore. Landry obtained a Judgment of Possession putting John Moore's ten children in possession of the Bowie heirlooms on February 2, 1993.
The Gibbens filed a Petition to Nullify the Judgment of Possession in Case No. 94-6060, Gibbens v. Burk and Landry as Executor of the Succession of John S. Moore. However, the suit was dismissed on May 24, 1994 on Landry's Exceptions of No Cause and No Right of Action. The Gibbens appealed; however, the Gibbens voluntarily dismissed their appeal as noted in this court's appeal order dated May 3, 1995 in Appeal No. 94-KA-2014. This case was dismissed as moot in the Judgment of September 4, 1996 and was not appealed.
In Case No. 93-1857 Landry filed a Writ of Possession and Writ of Distringas to obtain possession of the heirlooms from the Gibbens after the Judgment of Possession was final. The Gibbens opposed and argued that the Judgment of Possession was an absolute nullity because the judgment "was in favor of dead people." In its Reasons for Judgment on July 26, 1995, the trial court found that the Judgment of Possession in the Succession of John Seyborne Moore was "fatally flawed." Almost a year later, on June 26, 1996, the trial court entered a Judgment nullifying the Judgment of Possession in Case No. 93-1857, *753 Succession of John Seyborne Moore. Landry appealed this judgment.

ISSUES ON APPEAL
On appeal the Gibbens contend that in the Succession of Muriel Moore, the trial court erred in rendering a judgment against the Gibbens because the claims had been dismissed with prejudice and were res judicata. Also the Gibbens maintain that they were not defendants in the proceedings in the Succession of Muriel Moore so that the judgment against them is an absolute nullity. They also argue that the claims for the assets are barred by liberative prescription.
On appeal Landry contends that the trial court erred in: (1) not ordering the Gibbens to return specific pieces of furniture to the Succession although the trial court found that Muriel Moore did not give the Gibbens any furniture; (2) the trial court did not include $60,000 in U.S. Savings Bonds in the Judgment although the trial court found that the Gibbens defrauded Muriel Moore of the bonds in its Reasons for Judgment; and (3) dismissing the Judgment of Possession in the Succession of John Seyborne Moore as being absolutely null.

APPLICATION OF LAW

SUCCESSION OF MURIEL VERNET MOORE

Res Judicata
The Gibbens contend that the claims of the Succession of Muriel Moore against the Gibbens were dismissed with prejudice on October 4, 1996, and that judgment was not appealed and is final. The Gibbens claimed that they were no longer parties in the judgments against them through posttrial motions which were denied by the trial court. Subsequently this court denied the Gibbens' writ application on May 22, 1997 in No. 97-C-0952, and the Louisiana Supreme Court denied the Gibbens' writ application on May 29, 1997 in No. 97-CC-1391 concerning this claim that they were no longer liable because they were dismissed with prejudice in one judgment.
The record shows that the judgment dated October 4, 1996 was only in Case No. 94-7075, which was dismissed with prejudice as moot against the Gibbens. That case had been filed by Landry as the testamentary executor against the Gibbens and Western Surety Company for damages associated with the alleged theft of the Bowie heirlooms and financial assets. The Gibbens maintain that the judgment dated October 8, 1996 involved the identical claims from which they had been dismissed with prejudice. However, that case was a suit for damages for theft. The other cases remained in the consolidated action, including Case Nos. 91-9131 and 91-11434, and concerned the rights of ownership derived from the successions and any claims against the executors. The October 4, 1996 judgment in Case No. 94-7075 did not act as res judicata for the judgment dated October 8, 1996 in Case Nos. 91-9131 and 91-11434. The Gibbens were only dismissed from Case No. 94-7075 because the issues were moot as the issues on succession ownership and liability of the executors remained involved in the other consolidated cases.

Parties to Muriel Moore's Succession
The Gibbens also assert that they were named only as defendants in Case No. 94-7075 and not in Case Nos. 91-9131 and 91-11434 in the Succession of Muriel Moore. However, Mr. Gibbens remained a party as he originally was the executor in Case No. 91-9131. The trial court removed Mr. Gibbens as executor in its Judgment of March 4, 1994. However, the trial court stated that it: "does not discharge him or his surety from any liability for any actions or inactions taken by him during his tenure as executor." All the cases had been consolidated, and the parties remained in the suit. The issue remained in the successions as to who were the proper heirs of John Seyborne Moore *754 and Muriel Moore's assets and whether the previous executor had fulfilled his duties.
Prescription of Claims in the Succession of Muriel Moore
(a) Three Year Prescription for Good Faith Possession or Ten Year Prescription for Bad Faith Possession.
The Gibbens aver that they were owners of the Bowie items which had been Muriel Moore's movable property because they possessed the items in good faith, uninterrupted since March of 1984. Landry argues that the case did not prescribe for ten years because the Gibbens were bad faith possessors.
La. C.C. art. 3490 provides:
One who has possessed a movable as owner, in good faith, under an act sufficient to transfer ownership, and without interruption for three years, acquires ownership by prescription.
La. C.C. art. 3481 states:
Good faith is presumed. Neither error of fact nor error of law defeats this presumption. This presumption is rebutted on proof that the possessor knows, or should know, that he is not owner of the thing he possess.
The party alleging wrongdoing has the burden of proving bad faith. Hadwin v. Sledge, 116 So.2d 114 (La.App. 2 Cir.1959).
The Gibbens claim that they were not in bad faith because they believed that Muriel Moore had given them the heirlooms and assets. They noted that in his Reasons for Ruling dated August 26, 1996, the trial court did not find that the Gibbens were in bad faith. The trial court stated:
The Court does not find that the olographic will dated May 1, 1982 was confected under undue influence. Further, the Court does not find that M/M Gibbens concealed or embezzled assets of Muriel's estate so as to invoke the provisions of C.C. 1029. They had the right, even as Executor in Mr. Gibbens['] instant, to claim ownership of funds and assets which they felt they owned and should not be included in the estate, even if such claims were later (as here) disallowed.
The trial court did not state that the Gibbens were in good or bad faith. The trial court's conclusion is limited to the finding that the Gibbens had not concealed the assets and therefore did not fall under La. C.C. 1029, which provides:
Heirs, who have embezzled or concealed effects belonging to the succession, lose the faculty of renouncing; and they shall remain unconditional heirs, notwithstanding their renunciation, and shall have no share in the property thus embezzled or concealed.
The Gibbens were not subject to the loss of the faculty of renouncing because they did not embezzle or conceal the assets. They could be in bad faith for other reasons rather than concealment or embezzlement.
In the Reasons for Ruling dated August 26, 1996 the trial court further stated:
During her lifetime, Muriel Moore made no donations to Mr. and/or Mrs. Gibbens.... The Gibbens' claim of various donations is incorrect. This is supported by the fact that they included on the Sworn Descriptive List in Muriel Moore's succession some of the assets that they claim to own. Further, they included interest earned by monies they claimed to own on Muriel's income tax returns....
... The Gulf Oil Co. check which the Gibben claim was given to them, was endorsed not by Muriel but by Mr. Gibbens.
... They [two witnesses] clearly established to the Court's satisfaction that the portraits and artifacts, as well as furniture and other assets, were taken from Muriel's home only after she was placed in a nursing home by M/M Gibbens and *755 did not know that they were taken. There was no giving or delivery. In deed, Muriel could not give the portraits and artifacts away, as she only owned an undivided interest in them.
The record shows that Mr. Gibbens sent a letter to the IRS in 1983 stating that Muriel Moore needed "custodial care." Attached were Muriel Moore's medical records in which Dr. Francis Everhart diagnosed Muriel Moore as being "senile disturbed" on May 13, 1983. Dr. Curtis Chastain testified that Muriel Moore was suffering from senile dementia in 1985 when she went into the nursing home and that her mental capacity decreased over time. Dr. Chastain testified: "If you carry a diagnosis of organic brain syndrome or senile dementia, you would not be able to understand what you were doing in a financial transaction." In August 1987 a doctor at St. Jude Medical Center diagnosed Muriel Moore with organic brain syndrome.
There was no evidence that any donations inter vivos to the Gibbens were in written form. Although mere delivery of corporeal movables is sufficient to effect a change in ownership, the donee of a manual gift must show by strong and convincing proof that the donor had the intent to irrevocably divest himself of the thing and that delivery was made. Terrell v. Terrell, 26,863 (La.App. 2 Cir. 5/10/95), 655 So.2d 600. A person who challenges the capacity of a donor must prove by clear and convincing evidence that the donor lacked capacity at the time the donor made the donation. La. C.C. art. 1482. This court agrees with the trial court's statement that there were no manual gifts or donations because there was no giving or real delivery required under La. C.C. art. 1539. Mr. Gibbens acted in bad faith by taking the assets after the Gibbens placed Muriel Moore in a nursing home and she suffered from senility. There was clear and convincing evidence that Muriel Moore did not have the capacity to donate because she could not comprehend generally the nature and consequences of the disposition of the gifts because of her senility. Mr. Gibbens was in bad faith for misappropriating the assets which were in Muriel Moore's home although his actions were not concealed. Therefore, the claims had not prescribed because the time period would be ten years based on bad faith possession rather than the three year prescription based on good faith possession.
(b) One Year Prescription for Conversion or Ten Year Prescription for Misappropriation by Executor
The Gibbens further claim that the prescriptive period for the estate to recover money was one year because it was a claim for conversion of Muriel Moore's financial assets.
The prescriptive period for conversion is one year from the time that the plaintiff is or should be on notice of the alleged act of conversion. Noel v. Landry, 531 So.2d 570 (La.App. 2 Cir.1988), writ denied, 535 So.2d 746 (La.1989). In Manion v. Pollingue, 524 So.2d 25, 33 (La.App. 3 Cir.1988), writ denied 530 So.2d 572 (La.1988), the appellate court held:
... Unless otherwise provided by legislation, personal action is subject to a liberative prescription of ten years. LSA-C.C. 3499. The Legislature has provided a shorter prescription period for delictual actions. LSA-C.C. Art. 3492 provides:
"Delictual actions are subject to a liberative prescription of one year ..."
Any tort claim against Mr. Logan or O'Neil Pollingue, Jr. for breach of fiduciary duty would be classified as a delictual action and as such would have prescribed October 30, 1963, one year after the judgment of possession was signed.
The Gibbens aver that Landry knew in February 1985 that Bill Gibbens claimed ownership to all of the Bowie items. The Gibbens claim that Landry testified that he knew that Muriel Moore's assets were depleted in 1991, and any claim had prescribed after one year. Landry filed *756 suit in May of 1994 which was more than one year after 1991.
In the absence of a clear indication of legislative intent, the prescriptive statutes which can be given more than one reasonable interpretation should be construed to maintain rather than bar the action. Taylor v. Liberty Mut. Ins. Co., 579 So.2d 443 (La.1991).
In Pineda v. Ruppel, 94-136 (La.App. 5 Cir. 6/28/94), 639 So.2d 858, claims that the curator and under-curatrix failed to faithfully discharge their duties and obligations to the interdict with respect to settlement and funds obtained in a settlement, failed to use the funds for the benefit of the interdict, and failed to account for funds and assets of the interdict were subject to a ten-year prescriptive period for actions based on breaches of fiduciary duty and for accounting of the property held by the fiduciary.
In Ellias v. Ellias, 94-1049 (La. App. 3 Cir. 3/1/95), 651 So.2d 939, writ denied, 95-0832 (La.5/5/95), 654 So.2d 333, the appellate court held that the duty and obligation which the father had as joint owner of the property with his son to account to the son for revenues received from the sale of co-owned property was a personal obligation governed by a ten-year prescription period. In the present case, the family owned the property in indivision so that the heirs were co-owners, as recognized hereafter in this opinion. Mr. Gibbens was one of the co-owners who owned the Bowie heirlooms in indivision. The duty for Mr. Gibbens to account to the coowners was a personal obligation governed by a ten-year prescription period. La. C.C. art. 3499.
La. R.S. 9:5621 provides a two-year prescriptive period for actions against an executor; however, this two-year period does not apply to an executor's misappropriation. The prescriptive period for misappropriation by an executor is ten years.
The Gibbens also assert that any claim of conversion, theft, misappropriation et cetera of the Bowie items took place before Mr. Gibbens was named administrator of the succession and therefore, before his fiduciary duty as administrator was imposed by law.
A succession representative, whether executor or administrator, has a duty to collect and return all property of the succession. Langendorf v. Administrators of the Tulane Educational Fund, 361 So.2d 905 (La.App. 4 Cir.1978), writ denied, 363 So.2d 1384, and writ denied, 364 So.2d 120 (La.1978). As noted above, the Gibbens stated that any misappropriation took place before Mr. Gibbens became an executor of the succession.
The testamentary executor is bound to see the testament faithfully executed. La. C.C. art. 1672. When Mr. Gibbens was named as executor, he had a duty to see that all the assets were returned to the succession. After the administrator has paid the creditors, deducted his commission and other lawful expenses, he shall pay the balance over to the presumptive heirs if they have not renounced the succession. La. C.C. art. 1073. The succession representative is required to preserve, repair, maintain and protect the property of the succession. La. C.C.P. art. 3221. A succession representative shall enforce all obligations in favor of the succession. La. C.C.P. 3211.
In the present case, when the trial court removed Mr. Gibbens as executor in its Judgment of March 4, 1994, the trial court stated that it: "does not discharge him or his surety from any liability for any actions or inactions taken by him during his tenure as executor." Mr. Gibben's fiduciary duty as the executor encompassed any previous misappropriation undertaken even it were not concealed and occurred before he became executor because of his duty to recover the succession property.
*757 The claim based on misappropriation by the prior executor, Mr. Gibbens, would prescribe in ten years. The cases involving the Succession of Muriel Moore did not prescribe.

List of Itemized Assets
Landry contends that the trial court erred in not failing to order the Gibbens to return to Muriel Moore's Succession specific pieces of furniture although the trial court found that the Muriel Moore did not give the Gibbens any furniture.
Initially the trial court ordered the Gibbens to return all of the assets owned by the late Muriel Vernet Moore in its original judgment of October 8, 1996 in Case Nos. 91-9131 c/w 91-11434. The trial court granted Landry's motion for partial new trial in which he requested that the trial court enter a judgment against the Gibbens for the amount of cash assets to be returned. In its judgment dated January 6, 1997 against the Gibbens in the amount of $218,657.90 plus interest.
Considering that the trial court granted a partial new trial, the judgment of October 8, 1996 remained in effect with respect to the trial court's order for the Gibbens to return all of the assets of Muriel Moore. The judgment dated January 6, 1997 which ordered the Gibbens the return the sum of $218,657 plus interest represents only an itemization of the cash assets to be returned to the succession.
The judgment of October 8, 1996 stated that "the former Dative Testamentary Executor, William B. Gibbens, Jr., and his wife, May Gibbens, immediately turn over to the Executor, Robert J. Landry, all of the assets owned by the late Muriel Vernet Moore, or in which she had interest, which are presently being held by or through Mr./or Mrs. Gibbens" [Emphasis added]. This includes all assets which were taken through the Gibbens, which encompass Muriel Moore's assets wrongfully given by the Gibbens to other parties. That judgment also itemized the items to be returned by the Gibbens.
The other items listed by Landry include additional personal effects of Muriel Moore aside from the Bowie heirlooms which were also missing. The trial court's judgment of October 8, 1996 should be amended to list the items. This does not constitute a change in the original judgment because all of the items belonging to Muriel Moore were ordered to be returned. This is not limited to the two lists. All of the items, including any other assets of Muriel Moore, were not given by Muriel Moore to the Gibbens and should be returned.

U.S. Savings Bonds
Landry also complains that the trial court failed to include $60,000 in U.S. Savings Bonds in its judgment although it included that item in its reasons for ruling.
The Gibbens argue that Muriel Moore and May Gibbens were co-owners of the bonds in question. United States savings bonds with co-owners become the property of the surviving co-owner when the other co-owner dies. The bonds do not go through probate of the deceased coowner's estate. See Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962).
This court agrees with the trial court's finding that the attempted donation of U.S. Savings Bonds valued at $60,000 to the Gibbens in 1987 was invalid because Muriel Moore was suffering from senile dementia in 1985, and was not capable of making a donation. There was no giving or real delivery. Accordingly, May Gibbens was not co-owner of the bonds so they are part of Muriel Moore's estate. Therefore, the U.S. Bonds or the $60,000 should be returned to the succession.

SUCCESSION OF JOHN SEYBORNE MOORE
Landry complains that the trial court erred in annulling the judgment of possession in the Succession of John Seyborne *758 Moore. The Gibbens assert that the judgment putting Mr. Moore's ten children, all deceased, into possession of the Bowie Heirlooms was null because it was in favor of dead people. The Gibbens maintain that the judgment should have put the ten Moore children's heirs into possession rather then the ten children themselves.
The Judgment of Possession signed on February 2, 1993 became final in the Succession of John Seyborne Moore after the Gibbens voluntarily requested that their appeal be dismissed, and the appellate court dismissed the appeal on May 3, 1995. Landry filed a writ of possession and writ of distringas to obtain possession of the heirlooms from the Gibbens. In their opposition, the Gibbens argued that the judgment of possession was an absolute nullity.
A succession is opened not by the institution of a succession proceeding, but rather by the death or presumption of death. Dion v. Knap, 230 So.2d 842, 845 (La.App. 1 Cir.1970). Ownership to the heirs or legatees of the deceased does not require a formal succession proceeding. Transfer of ownership upon death is acceptance of the succession by the heir. Under Louisiana law the succession is opened immediately upon the death or its presumption, the heir succeeds instantly to the rights of the deceased at the moment of death, and the heir is vested with seizen. La. C.C. 940; Lowry v. Atlantic Refining Co., 231 F.Supp. 775 (W.D.La.1964), affirmed 363 F.2d 876 (C.A.5 (La.) 1966). Under the Louisiana doctrine of "le mort saisit le vif," the dead gives seizen to the living. Comment, Seisin in the Civil Law and in Louisiana, 15 Tul. L.Rev. 576, 576 (1941). The seizin of a succession rests in some individual at all times, and never lapses. At no time is legal ownership vested in the abstract entity known as the "succession." Rickey v. U.S., 427 F.Supp. 484 (W.D.La.1976), affirmed 592 F.2d 1251 (5th Cir.1979).
To inherit, the heir must exist at the moment that the succession becomes open. La. C.C. 953. To inherit, John Seyborne Moore's children had to be living at the time of their father's death. All of the ten children were alive and had seizin when their father, John Seyborne Moore died.
La. C.C. art. 944 provides:
The heir being considered as having succeeded to the deceased from the instant of his death, the first effect of this right is that the heir transmits the succession to his own heirs, with the right of accepting or renouncing, although he himself have not accepted it, and even in case he was ignorant that the succession was opened in his favor.
Acceptance is tacit when some act is done by the heir, which necessarily supposes his intention to accept, and which he would have no right to do but in his quality as heir. La. C.C. art. 988. It is necessary that the intention should be united to the fact, or rather manifested by the fact, in' order that the tacit acceptance be inferred. La. C.C. art. 990. Not only the person who is entitled to an inheritance may accept it, but if he dies before having expressly or tacitly accepted or rejected it, his heir shall have a right to accept it under him. La. C.C. art. 1007. He who is called to the succession, being seized thereof in right, is considered the heir, as long as he does not manifest the will to divest himself of that right by renouncing the succession. La. C.C. 1014. The renunciation of a succession is not presumed; it must be made expressly by public act before a notary, in the presence of two witnesses. La. C.C. 1017. The right to accept a succession of an estate continues upon the death of the heir; the unexercised right of acceptance is passed along at death. Succession of Helwick, 622 So.2d 823 (La.App. 4 Cir.1993).
In the present case the inheritance was transmitted from the deceased, John Seyborne Moore, to his living descendants, the ten children. There is no showing that the ten children renounced John Seyborne Moore's succession. The unexercised right of acceptance was passed along at *759 the deaths of the ten children to their heirs.
In the Judgment of Possession of the Succession of John Seyborne Moore, the trial court named John Seyborne Moore's children and put them into possession. The heirs of an intestate shall be recognized by the court when all of the heirs are competent. La. C.C.P. art. 3001. However, because John Seyborne Moore's children were deceased, they are incompetent and cannot be put into possession of the property. The Judgment of Possession is an absolute nullity for defects patent on the face of the proceedings leading up to it under La. C.C.P.2002; Charia v. Allstate Ins. Co., 93-1230 (La.App. 4 Cir. 3/29/94), 635 So.2d 370.
If a default judgment is an absolute nullity for defects patent on the face of the proceedings leading up to it, it may be attacked at any time, at any place, by rule or by any other method where the validity of such a judgment is asserted; but if not, it cannot be attacked except by direct action of nullity preceded by petition and citation. Garnett v. Ancar, 203 So.2d 812, 814 (La.App. 4 Cir.1967). See also LaBove v. Theriot, 597 So.2d 1007, 1011 (La.1992). (In contrast to an absolute nullity, a relative nullity involving an error of substance, requires a direct action in an ordinary proceeding where a Petition of Nullity is filed and the parties are properly served. La. C.C.P.2004.)
In Webster v. Boh Bros. Const. Co., Inc., 603 So.2d 761 (La.App. 4 Cir.1992), in the case of an absolute nullity, the fact that the plaintiff incorrectly filed a "Motion for Nullity" rather than a "Petition for Nullity" was not controlling although the plaintiff failed to file a separate, direct Petition for Nullity.
In the present case the issue of the absolute nullity of the Judgment of Possession based on the incompetency of the deceased children was raised by the Gibbens on July 18, 1995 in opposition to Landry's motion for a writ of possession and writ of distringas to obtain possession of the heirlooms from the Gibbens. The Gibbens' opposition is in the nature of a collateral attack and is permissible where the nullity is absolute and is not subject to venue and delay requirements of an action of nullity.
In Smith v. Burden Const., 379 So.2d 1133, 1134 (La.App. 2 Cir.1979), the judgment was declared an absolute nullity, and the case was remanded for such action as the law permits, including the substitution of a legal successor of the deceased party, the rendition and signing of a judgment in favor of or against the properly substituted party, and the perfection of an appeal from such judgment by any party to the action. In Charia v. Allstate Ins. Co., supra, this court remanded the case to allow substitution of a succession representative for the deceased plaintiff. See also Gulfco Finance of Livingston, Inc. v. Lee, 224 So.2d 524 (La.App. 1 Cir.1969), appeal after remand, 241 So.2d 301 (La.App. 1 Cir.1970). Affirming the absolute nullity of the Judgment of Possession and finding that the case had not prescribed as discussed below, this court would remand the case for further proceedings to substitute the proper representatives in the Succession of John Seyborne Moore.

Thirty Year Prescription
The Gibbens also aver that any action for recognition of a right of inheritance in John Seyborne Moore's succession prescribed after 30 years under La. C.C. art. 3502, and Mr. Moore's succession was opened by operation of law on the day of his death on October 23, 1896 pursuant to La. C.C. 934.
In Fleniken v. Allbritton, 566 So.2d 1106 (La.App. 2 Cir.1990), liberative prescription of 30 years applicable to an action for recognition of the right of inheritance and recovery of whole or part of a succession would not have accrued if all parties had held the succession property as coheirs or co-owners in indivision. The appellate court stated:
*760 It is a settled issue that coheirs or coowners do not as a general rule acquire or lose by prescription against each other. LSA-C.C. arts. 3439, 3478; C.C.P. art. 3659; Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953), and citations therein; Headrick v. Lee, 471 So.2d 904 (La.App. 2d Cir.1985). It would appear from the judgment of possession and from the "agreement" to maintain the disputed revenues in escrow that all the parties have held the succession property as coheirs or coowners in indivision since 1944. If this is so, the prescription of art. 3502 would not accrue in favor of the defendants.
This is not to say, of course, that the defendants cannot prove art. 3502 prescription. Article 3502 must be read in pari materia with LSA-C.C. 481, whereby ownership is lost when acquisitive prescription accrues in favor of an adverse possessor. See art. 3502, official comment (c); Harang v. Golden Ranch [Land] & Drainage Co., 143 La. 982, 79 So. 768 (1918); A.N. Yiannopoulos, Civil Law Property, Sec. 201 (2d ed.1980). The defendants may be able to prove that they possessed the property adversely to the plaintiffs' rights. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1950); Headrick v. Lee, supra. There are no such allegations or evidence in the instant record, however, and the reception of evidence will probably be necessary to resolve the issue. There was no apparent error in overruling the exception of prescription prior to trial.
Id., at 1113.
In the present case the Gibbens argue that the Bowie heirlooms and other property were donated to them by Muriel Moore. The donee has the burden of proving a donation was made, and the proof must be strong and convincing. Arnold v. Fenno, 94-1658 (La.App. 4 Cir. 3/16/95), 652 So.2d 1078, 1080. The Gibbens claim that Muriel owned all of the Bowie heirlooms because she was the last single living heir of John Seyborne Moore. The Gibbens contend that Muriel Moore acquired sole ownership of the Bowie items in 1981, after three years of good faith possession after her brother Elvyn Moore died in 1978. However, there is no evidence that John Seyborne Moore provided a will designating that the Bowie heirlooms were to be inherited in this manner.
Landry asserts that the Bowie items were held in indivision by all of the heirs of John Seyborne Moore. Muriel's ownership was in indivision with the other heirs. The heirlooms were owned jointly with no single person owning any particular part of the property.
This court agrees with the trial court's finding that both of Muriel Moore's olographic and statutory wills are valid. Muriel Moore's statutory will of August 21, 1979 stated that: "I recognize that all of the furniture, furnishings, decorations and portraits located in the family home at 1325 Short Street do, in fact, belong to the entire family. I instruct my administrator to divide these family belongings among the family, or in the event they are indivisible, then to sell the furniture, etc., and split the proceeds among the family." Muriel Moore acknowledged that the items in her home were owned by all of the family. This court concludes that the heirs held the Bowie heirlooms in indivision. Therefore, the coheirs as coowners did not acquire or lose by prescription against each other.

CONCLUSION
Accordingly, in the succession of Muriel Vernet Moore, the trial court's judgment of October 8, 1996 includes but is not limited to the following missing items:
1) The portrait of James Bowie;
2) The portrait in pencil of Rezin Bowie;
3) The oil portrait of Mrs. Rezin Bowie;
4) The oil portrait of Martha Bowie;

*761 5) The portrait of John Hickman Moore;
6) The portrait of two children;
7) Jim Bowie's sword;
8) Rezin Bowie's rifle;
9) Powder horn;
10) The family tree of Bowie family.
For clarity, the trial court's judgment of October 8, 1996 also includes but is not limited to the above items as well as the following missing items:
1) Dresser seized in sequestration;
2) Two matching chairs seized in sequestration;
3) Grand Isle trophy seized in sequestration;
4) Dining room set which consisted of a table, six chairs, china closet, and side board in the possession of Nora Gibbens Redmann, her spouse or descendants in California;
5) Two love seats and four matching chairs (two from Gibbens home);
6) Muriel's statue of the Blessed Mother;
7) Two vases from Muriel's mantle;
8) Jardiniere;
9) Cut glass lamp;
10) Rezin Bowie's Commission as Captain of the Mounted Rifles in the Avoyelles Battalion;
11) Resin Bowie's Passport to "Texas in Mexico;"
12) Antique eyeglasses;
13) Letter postmarked by the Pony Express;
14) Silver and one silver fruit basket. All of the above items, along with any other assets of Muriel Moore, were not properly given by Muriel Moore to the Gibbens and should be returned.
The Gibbens are ordered to return the U.S. Bonds or the amount of $60,000 to Muriel Moore's succession.
The judgment of absolute nullity is affirmed in the Succession of John Seyborne Moore. The case of the Succession of John Seyborne Moore is remanded for such action as the law permits, including the substitution of legal successors of the deceased parties, and the rendition and signing of a judgment in favor of or against the properly substituted parties.
AFFIRMED AS AMENDED; AND REMANDED.