976 So.2d 851 (2008)
Margaret Howard TILLEY, et al., Plaintiffs-Appellants
v.
UNOPENED SUCCESSION OF Walter J. HOWARD, Defendants-Appellees.
No. 43,013-CA.
Court of Appeal of Louisiana, Second Circuit.
February 20, 2008.
Rehearing Denied March 13, 2008.
*852 Culpepper & Carroll by Bobby L. Culpepper, Jonesboro, for Appellants Margaret H. Tilley, et al.
Hal R. Henderson, Arcadia, Hargrove, Smelley, Strickland & Langley by Joseph L. Hargrove, Jr., Shreveport, for Appellees William Hamiter, Jr. John T. Hamiter.
Gary D. Nunn, for Appellees Unopened Succession of Walter J. Howard, et al.
Before STEWART, GASKINS and LOLLEY, JJ.
LOLLEY, J.
The plaintiffs in this case, Margaret Howard Tilley, Sandra Howard Morton, Jackie Gerardi, Harry C. Groves, Patricia Howard Hill and Hal and Vivian Henderson (hereinafter, plaintiffs or appellants), appeal a judgment by the Second Judicial District Court, Parish of Bienville, State of Louisiana, dismissing their claims against William Hamiter, Jr., John T. Hamiter, and the Unopened Succession of Walter J. Howard (hereinafter, the defendants or appellees).[1] For the following reasons, we reverse the judgment of the trial court.

FACTS
This matter is a suit for declaratory judgment filed by the plaintiffs to be declared the sole owners of all of the property described as the E/2 of SW/4, Section 17, Township 16 North, Range 4 West, Bienville Parish, Louisiana (the "property"). In their petition, the plaintiffs claim to be the sole owners of the property by virtue of ten and/or thirty years' acquisitive prescription. The defendants, on the other hand, contend that they are co-owners of a 1/4 interest in the property.
The parties in this litigation are all descendants of Henry and Sophronia Howard. Henry and Sophronia had two sons: Walter and Charlie. The present-day litigants stem from those two rootsthe plaintiffs from Charlie and the defendants from Walter. The property was originally owned by Henry and Sophronia. In 1902, Henry died. His widow then owned a 1/2 interest in the property, and the sons were co-owners of a 1/2 interest in the property. On November 17, 1908, Walter executed a deed (the "1908 deed") in which he sold to his brother, Charlie, all of the interest in the property that he owned at the time (i.e., a 1/4 interest). He also purported to sell to Charlie the interest in the property he would have upon his mother's death (i.e., the 1/4 interest he stood to inherit upon Sophronia's death). Specifically, the 1908 deed stated (verbatim):
The said Walter J. Howard, declares that he has this day and by these presents do grant, bargain sell, convey and deliver unto his brother, the said C.G. Howard, all his interest in and to the above described property, and all the interest he would have in case of his mothers death renouncing and relinquishing *853 all his rights, title and interest in and to said property, by reason of his heirship to said property. The said C.G. Howard accepting said sale of said interest without in any way disturbing the usufruct enjoyed by his mother.
Sophronia did not die until 1914, and there is no evidence in the record regarding her succession.
It is the 1/4 interest Walter stood to inherit from his mother that is now in dispute in this litigation. The plaintiffs, Charlie's heirs, argue that the 1908 deed placed Walter and his heirs (the defendants) on notice that Charlie's and/or his heirs' possession of the property was adverse and not co-owners. At the trial of the matter, the plaintiffs provided evidence of various acts of possession through the years in order to prove their ownership of the property through acquisitive prescription. The defendants maintain that the 1908 deed did not serve to place Walter on notice of Charlie's adverse possession, because it was an absolute nullity-Walter could not sell an interest in his mother's future succession. Further, the defendants argued that the plaintiffs failed to prove overt acts of adverse possession for the requisite period of time. After hearing all the evidence, the trial court determined that the plaintiffs did not demonstrate overt and unambiguous acts for a period of time sufficient to put the defendants on notice that they intended to possess the property for themselves. Ultimately, the trial court dismissed plaintiffs' claims and this appeal ensued.

DISCUSSION
After a brief trial of the matter, the trial court concluded that the plaintiffs failed to prove they had possessed the property adversely for a thirty-year period; however, we believe that this determination was manifestly erroneous, because the record shows that starting in 1908 and up to at least 1970, Charlie and his heirs exercised overt, unambiguous and uninterrupted acts of possession on the property.
The general rule of acquisitive prescription is provided in La. C.C. art. 3486, which states, "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." The party alleging acquisitive prescription must establish that its possession has been continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476. Possession is transferable by universal title or by particular title. La. C.C. art. 3441. Thus, there is no interruption of possession when a possessor dies. Finally, and of significance to the facts in this case, one who proves that he had possession at different times is presumed to have possessed during the intermediate period. La. C.C. art. 3443.[2]
However, as a general and well-established jurisprudential rule, an owner in indivision cannot acquire by prescription the rights of his co-owners in the property held in common. Possession by one co-owner is generally considered as being exercised on behalf of all co-owners. Arnold v. Sun Oil Co., 218 La. 50, 48 So.2d 369 (1949); Hill v. Dees, 188 La. 708, 178 *854 So. 250 (1937); Dew v. Hammett, 150 La. 1094, 91 So. 523 (1922); Simon v. Richard, 42 La. Ann. 842, 8 So. 629 (1890); Litton v. Litton, 36 La. Ann. 348 (1884); Liner v. Lewis, 34,746 (La.App. 2d Cir.06/22/01), 792 So.2d 822, writ denied, 2001-2547 (La.12/07/01), 803 So.2d 972; Headrick v. Lee, 471 So.2d 904 (La.App. 2d Cir.1985).
An exception to the general co-owner rule is allowed. Louisiana C.C. art. 3439 states, in pertinent part, that: "A co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner." See Franks Petroleum, Inc. v. Babineaux, 446 So.2d 862 (La.App. 2d Cir.1984); Givens v. Givens, 273 So.2d 863 (La.App. 2d Cir.1973), writ refused, 275 So.2d 868 (La.1973); Lake Charles Harbor and Terminal District v. Erwin Heirs, Inc., 1996-28, XXXX-XXXX (La.App. 3d Cir.05/08/96), 673 So.2d 1351. However, where a co-owner goes into and continues possession under a recorded instrument apparently conveying title, even though the purported conveyance may be invalid, the recorded instrument together with the acts of possession constitute notice to other co-owners. The possession is then regarded as hostile to the claims of the other co-owners, rebutting any presumption that possession is for the benefit of all co-owners. Succession of Seals, 243 La. 1056, 150 So.2d 13 (1963); Franks Petroleum, Inc., supra; Givens, supra.
It is undisputed that Walter and Charlie commenced their ownership of the property as co-owners; thus, in order for Charlie and/or his heirs to have adversely possessed against Walter and/or his heirs as to the 1/4 interest in dispute, he would have had to give notice to Walter of his intent to adversely possess the property. Although the invalid 1908 deed from Walter to Charlie was insufficient to transfer title to the 1/4 interest in dispute, the jurisprudence is clear that it may serve as notice to Walter of Charlie's (and his heirs') intent to adversely possess the 1/4 interest in the property. The fact that Charlie originally went into possession under an invalid conveyance is of no importance under the rules relating to thirty-years' prescription. In fact, thirty years' acquisitive prescription specifically contemplates and applies to the situation where there is no valid deed translative of title and "good faith" on the part of the possessor is not required. However, the 1908 deed, together with additional overt acts of possession, could serve to rebut the presumption that possession was for the benefit of all the co-owners. Once Charlie and his heirs proved they commenced possession under a recorded instrument, the 1908 deed, it was incumbent upon the plaintiffs to prove that other "acts of possession" occurred, which acts had to be "overt and unambiguous" as required by art. 3439.
Here, the trial court found in its reasons for judgment, that the earliest acts of possession did not occur until the 1950s, when Charlie's sons, Ocie and Selby Howard, leased the property to H.G. Lowe for grazing cattle. Lowe's rental payment consisted of the payment of the ad valorem taxes on the property. However, we note that the trial court overlooked (and committed manifest error in doing so) two important pieces of evidence indicating Charlie's possession as owner of the property much earlier than the 1950s-(1) the tutorship proceeding of Charlie's sons, and (2) the administration of Charlie's succession in early 1917.
In the tutorship proceeding which occurred upon Charlie's death, his widow petitioned the court to be named tutor and Walter to be named undertutor. In connection with the tutorship, an inventory of *855 Charlie's property was performed and the property was listed therein and filed with the court. It was valued at $800.00. There was no indication that Charlie's interest in the property was shared. A short time after the tutorship proceeding was filed, Walter petitioned the court to commence the administration of Charlie's succession, and in that petition, Walter noted "that the inventory and appraisement taken and made [in the tutorship proceeding] . . . be adopted and made the inventory for the administration."[3] Clearly, following the 1908 deed, Charlie had possessed the property as ownerwhich possession was acknowledged by Walter in the legal court documents in 1917. Furthermore, at trial Wilber Rogers, Ocie and Selby Howard's younger half-brother, recalled visiting the property as a child. He testified that his mother had lived in a house on the property that was later abandoned.[4] It is evident that Charlie possessed the property for himself and his heirs, and not as co-owner, as a result of the 1908 deed, and Walter was obviously on notice of his adverse possession of the property as evidenced by the legal proceedings in which Walter was a clear participant.
Other than testimony noting occasional visits to the property and the continued payments of ad valorem taxes by Charlie's heirs, there is no proof of an overt and unambiguous act of possession until the 1950s, when the property was leased to H.G. Lowe for the grazing of his cows. As stated, Lowe paid the property taxes as rental for the property. There was also testimony by Patricia Hill, which was confirmed by Margaret Tilley, that in the 1960s Patricia took her family regularly to the property to camp, fish, and hunt. Patricia also testified that she and her two sisters sold the timber on the property to Leon Crawley in 1969, and she provided an unsigned copy of the timber deed she kept in her records. In response, the defendants failed to provide any evidence of possession that might have served to interrupt the overt and unambiguous acts of possession by Charlie's heirs during the period of time between the 1908 deed and the sale of timber to Crawley in 1969in fact, the defendants are unable to point to any acts of possession before the 1970s, when various heirs of Walter's executed a mineral lease, that the defendants maintain interrupted the possession of the plaintiffs and their ancestors in title. Considering art. 3443, we may presume that Charlie and his heirs continued their possession of the property between 1917 until the 1950s and into the 1960sthe period of time for which the plaintiffs proved their adverse possession. See Rushing v. Smedley, 142 So. 330 (La.App. 2d Cir. 1932).
Considering the record before us, it is apparent that the plaintiffs proved actual, overt, unambiguous and uninterrupted possession of the property for more than thirty years, as well as notice of the hostile and adverse nature of Charlie's possession by virtue of the 1908 deed. Together with the absence of any acts of possession by the defendants or their ancestors in title that might have interrupted the possession during that period, the plaintiffs prevailed in proving their sole ownership of the property through thirty years' acquisitive prescription. The trial court was manifestly erroneous in concluding otherwise. We note that this case may be distinguished from Headrick, supra, in which it *856 was determined that the possessors failed to demonstrate an intent to possess for themselves by overt and unambiguous acts sufficient to give notice to their co-owners. However, in Headrick, there was no instrument that purported to convey title between the co-owners to buttress the subsequent acts of possession exercised by the possessors, as in this case.

CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing the plaintiff's claims is hereby reversed and the plaintiffs, Margaret Howard Tilley, Sandra Howard Morton, Jackie Gerardi, Harry C. Groves, Patricia Howard Hill and Hal R. Henderson, are declared to be the sole owners of the property in dispute as prayed for in their Petition for Declaratory Judgment. All costs of this appeal are assessed to the defendants.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, CARAWAY and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The heirs to the Unopened Succession of Walter J. Howard are: Earl Nunn, Othel Nunn, Clovis Anderson, Charles Lee Nunn, Vonice Stroud, Shirley Payton, Mary Elizabeth Davis, Jack Norred, Arnold Calvin Howard, Joy Howard Mead, Virginia Digilormo, Jerald David Kennedy, Marlene Howard Dark, Donna Howard Catlin, Randall Howard, Joel Kevin Howard, Robbie Howard, Billy Joe Adcock, Nellie Ray Waldsworth, Jenetta Faye Stevenson, Myrtle Howard Gilbert, Floyd Desay Howard, Preston Howard, Karen Renee Causey, Michael Anthony Howard, William Hamiter and John Hamiter. We note that William Hamiter and John Hamiter retained separate counsel from the Unopened Succession of Howard, although their interests herein are aligned.
[2] We note that in this case, the plaintiffs could not acquire the property by ten years' acquisitive prescription, which requires good faith and just title. See La. C.C. art. 3475. We agree with the defendants that the 1908 deed was an absolute nullity insofar as it attempted to transfer Walter's future interest in the property, because it purported, on its face, to renounce Walter's succession rights (through the conveyance of the property). Therefore, the 1908 deed cannot be considered the requisite "just title" to allow acquisitive prescription in ten years.
[3] The inventory in the tutorship proceeding refers to only one immovablethe propertyalong with livestock, various farm implements, and household goods belonging to Charlie.
[4] Apparently, Charlie Howard's widow remarried after his death, and Wilber Rogers is her son from that marriage.