# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-487


SUCCESSION OF GABRIEL FUSELIER

VERSUS

BILLEAUD SUGAR FACTORY, ET AL.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82443
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and Jonathan W. Perry, Judges.


**AFFIRMED AS AMENDED.**

**Robert L. Cabes**
**Milling, Benson Woodward, L.L.P.**
**P.O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Billeaud Sugar Factory**

**Lee A. Archer**
**Law Office of Lee Ann Archer, APLC**
**1225 Rustic Lane**
**Lake Charles, LA 70605**
**(337) 474-4712**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Billeaud Sugar Factory**

**Allan L. Durand**
**Attorney at Law**
**235 La Rue France**
**Lafayette, LA 70508**
**(337) 237-8501**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Gabriel Fuselier, LLC**

**GREMILLION, Judge.**

Billeaud Sugar Factory, Inc. (BSF) appeals the judgment of the trial court declaring Gabriel Fuselier, LLC (GFL) owner by acquisitive prescription of disputed land located in St. Martin Parish. For the reasons that follow, we affirm as amended.

## FACTS AND PROCEDURAL POSTURE

The Property in question is described as, "A certain tract of land containing 182.28 acres, more or less, being the irregular Sections 64 and 65, Township 10 South, Range 5 east, St. Martin Parish, Louisiana, located east of Bayou Tortue in St. Martin Parish, Louisiana."[1] Sections 64 and 65 are bounded on the north-northeast by the line separating Range 5 east from Range 6 east. The two sections extend parallel northeast to southwest across Bayou Tortue into Lafayette Parish.[2] The Property consists of mostly bottom land. Section 64 is bisected by a wide ridge that runs west to east from Bayou Tortue to Cypress Island Coulee at a point beyond the limits of the Property. This ridge also crosses the northern part of Section 65.

In March 2015, Eric Martin, in his capacity as the Administrator of the Succession of Gabriel Fuselier and Bazilie Ternant Fuselier, filed a petition for declaratory judgment against BSF, Cypress Properties, which is a partnership with its principal place of business in Lafayette, and The Nature Conservancy, a non-profit domiciled in Washington, D.C. The three defendants, according to the petition, had all made claims to land in sections 63, 64, and 65, T10S, R5E, and sections 91, 92, and 93, T10S, R6E, which the succession claimed it owns. Cypress Properties allegedly claimed land in sections 91, 92, and 93, T10S, R6E; thus, the demand

---

[1] Bayou Tortue forms part of the boundary between St. Martin and Lafayette Parishes. Sections 64 and 65, T10S, R5E, lie in both parishes, but only those portions in St. Martin Parish are at issue.

[2] Cypress Island Coulee and Bayou Tortue meet at a point west of the Property. Bayou Tortue runs roughly north-to-south and Cypress Island Coulee roughly west-to-east.

against Cypress Properties is not at issue herein. The Nature Conservancy claimed a portion of section 63, T10S, R5E, according to the petition.[3] The petition alleged that the succession had possessed the Property for the previous 200 years. The petition prayed for a judgment declaring that it was the exclusive owner of the Property.

BSF answered the petition and filed a reconventional demand in which it alleged that its ancestor in title, Bayou Tortue Livestock, acquired the Property in a 1963 tax sale and thereafter conducted various operations on the Property, including timber harvesting and cattle grazing, and executed sales of timber and mineral leases. In 1985, the reconventional demand alleged, Bayou Tortue Livestock sold the Property to BSF. BSF sought a judgment declaring that it owned the land either through title or by acquisitive prescription.

On November 2, 2017, BSF filed a motion for summary judgment in which it argued that in 1835, Bazilie Ternant Fuselier's brother, Vincent Ternant, had the Property seized by the St. Martin Parish Sheriff and sold to satisfy a debt Bazilie owed him. Bazilie's heirs purchased the Property at sheriff's sale; therefore, the succession did not have an ownership interest in the Property. Further, BSF attached instruments of title and affidavits regarding BSF's use of the Property and lack of use by anyone associated with the succession. The record and minutes do not reflect that this motion was heard. BSF then filed a second motion for summary judgment.

The succession filed its own motion for summary judgment and supported it with affidavits attesting to the use of the Property by Fuselier heirs and disputing many of the assertions contained in BSF's affidavits supporting its motion for summary judgment.

---

[3] The claims against Cypress Properties and The Nature Conservancy were settled prior to trial.

2

The succession joined with the Succession of Auguste R. Fuselier to form Gabriel Fuselier, LLC, which was substituted as plaintiff in the case. The motions for summary judgment were heard in May 2018. The trial court ruled, without further elucidation, that genuine issues of material fact precluded summary judgment.

Trial on the merits was held in September 2018. The depositions of Charles A. Fuselier and Howard Champagne were introduced into the record. The plaintiff called Jessie Martin, James Foret, Kevin Calahan, Daniel Fuselier, Richard Martin, and Pat Champagne as witnesses.

Jessie Martin is a descendant of Gabriel Fuselier and a member of the Prairie Roan Hunting Club. He first visited the Property at the invitation of Charles A. Fuselier. He has regularly hunted the Property since 2007.

The Prairie Roan Hunting Club was founded by Blaise Armentor. Mr. Martin identified nine deer stand locations maintained by the Prairie Roan Hunting Club on the Property. Members of the Prairie Roan Hunting Club also maintain motion-detecting game cameras on the Property. Mr. Martin has never encountered someone on the Property who does not belong to Prairie Roan Hunting Club and his game cameras have never captured someone on the Property who is not a member. Mr. Martin visits the Property at least once a week. The Property is posted.

Mr. Martin testified that he is aware that BSF claims that it conducted timber harvesting on the Property. He knows of no stumps on the St. Martin Parish side of Bayou Tortue in sections 64 or 65; however, there are stumps on the Lafayette Parish side of the bayou.

James Foret is a Professor of Horticulture at the University of Louisiana at Lafayette and a private arborist consultant. He was tendered as an expert in the case. In connection with his retainer, Mr. Foret visited the Property. He saw no evidence that timber operations had been conducted on the Property in the 1960s or later.

3

Most of the timber on the Property is cypress. Cypress contains a high level of terpenes that preserve the wood. Loggers of the day typically sawed at a three-foot level for safety reasons. Had cypress trees been harvested on the Property, Mr. Foret would expect to see stumps but observed none. Mr. Foret opined from his experience that timber-skidding equipment leaves scarring on the land, and he observed no scarring.

Mr. Foret also testified that he observed areas that had been used for rice production that were being reclaimed by trees and other growth.

Kevin Calahan is a member of Prairie Roan Hunting Club. The club was founded by Blaise Armentor in the 1980s. Prairie Roan Hunting Club has about twenty members. Mr. Calahan has been a member of the club since 2002, and, until about three years before trial, he visited the Property weekly. Mr. Calahan's testimony about trespassers and game cameras mirrored that of Jessie Martin.

Mr. Calahan testified that he has observed no logging remnants on the Property; however, he has noticed logging remnants in sections 85 and 86.

Mr. Calahan was asked about his familiarity with the "Basmone" Hunting Club.[4] Mr. Calahan testified that he is familiar with the club, and its members hunt sections 64 and 65 across Bayou Tortue in Lafayette Parish.

Daniel Fuselier is the grandson of Auguste Fuselier. He used to stay at his grandfather's home. Daniel Fuselier has been in the construction trade since the late 1970s. He was hired by Blaise Armentor beginning in 1978 to bulldoze shooting lanes on the Property for the hunting club. While bulldozing the shooting lanes, Mr. Fuselier avoided damaging any of the larger trees.

_____

[4] This was the name reflected in the record transcript. For reasons that will become clear, the court thinks that this should be "Bas-Font."

4

Richard Martin is the seventy-eight-year-old former St. Martinville Police Chief. He has hunted the Property his entire life. He recalls Auguste Fuselier ranging cattle on the Property when he was a teenager. Mr. Martin obtained permission to hunt from Auguste Fuselier at that time.

Mr. Martin testified that Auguste Fuselier leased some of the Property to Ophie Romero for rice growing. In the 1960s, Auguste Fuselier leased section 64 to Howard Champagne for rice production. Mr. Martin also testified that there has been no timber harvesting on the Property. Mr. Martin has encountered trespassers himself and chased them from the Property.

Pat Champagne testified that, as a youth, he visited the Property frequently. He recalled that Auguste[5] had cattle on the Property. When he was thirteen or fourteen, Mr. Champagne helped with the annual cattle branding on the Property. Mr. Champagne was seventy-four years old at trial.

Charles A. Fuselier was the grandson of Auguste Fuselier. He was born in 1943. He testified in his deposition that one of his earliest memories involves rice production on the Property. When he was six or seven years old, Mr. Fuselier would mount his Shetland pony and ride around supplying water to the hands that were harvesting rice on the Property. There were about twenty hands working at the time. Mr. Fuselier also hunted the Property as a youth.

The rice fields were fed by a large pump that diverted water from Cypress Island Coulee into a raised canal or aqueduct that Mr. Fuselier testified must have been built by his grandfather. This pump was located close to the coulee on the north side of the Property. Mr. Fuselier recalled the pump being damaged once when an alligator was caught in it.

---

[5] The record of Mr. Champagne's testimony spells Mr. Fuselier's name "Ogeus."

Auguste Fuselier also ranged cattle on the Property. Charles Fuselier testified that there was a barbed wire fence that separated the rice fields to prevent the cattle from entering them; otherwise, the cattle ranged from Bayou Tortue to Cypress Island Coulee. He also testified that a fence bounded the eastern property line. Mr. Fuselier identified a newspaper article from 1946 that described a cattle-rustling operation that targeted Auguste Fuselier's livestock.

In the 1970s, Mr. Fuselier's father opened a new succession of Gabriel Fuselier, and, as administrator, executed mineral leases over the Property. Mr. Fuselier succeeded his father as administrator until he was succeeded by Eric Martin. The succession's lease netted it many thousands of dollars that remain in an escrow account. The money is being held pending the identification of the heirs, many of whom are unknown.

Howard Champagne was born in 1943 and is a lifelong resident of St. Martinville. His father obtained permission from Auguste Fuselier for him and his son to hunt the Property. Howard Champagne retains a vivid recollection of hunting the Property during the first snowfall in St. Martin Parish he can recall, around 1957. Mr. Champagne's first time to hunt the Property with his father was when he was eight years old. Auguste Fuselier raised cattle on the Property at the time. Mr. Champagne also recalled an incident in which a horse ridden by one of the cattlemen caught its leg in a barbed wire fence on the Property and was badly injured.

Mr. Champagne's family owns land adjacent to the Property. Across Cypress Island Coulee lies one tract owned by the Champagnes. Mr. Champagne farmed rice on that land, as did his father before him. His father obtained permission from Charles Fuselier to farm rice along the frontage on Cypress Island Coulee around 1980. This farming took place along the northern boundary of sections 63, 64, and 65.

After the plaintiff rested, BSF sought to introduce the public records of title to the Property. Plaintiff objected because those public records contained seven affidavits that plaintiff argued were hearsay. The objection to the affidavits was sustained. BSF proceeded with its case and called Roy Billeaud, Charles Billeaud, Michael Billeaud, Karl Girouard, and Dudley Hebert.

Roy Billeaud is a title abstractor hired to research title to the Property. Gabriel Fuselier probably acquired the Property in a Spanish land grant. His ownership was confirmed by land commissioners and an Act of Congress following the Louisiana Purchase. Gabriel's succession was opened on December 2, 1820. No judgment of possession was rendered. Bazilie Ternant Fuselier's succession was opened on March 15, 1830, and no judgment of possession was entered in her succession, either.

On May 27, 1835, the Property was sold at sheriff's sale to satisfy a debt Bazilie owed her brother, Vincent Ternant, for money she borrowed to purchase land in St. Mary Parish. Clara Fuselier Brian, Bluger Adolphe Fuselier, Gabriel Fuselier III, Oglea Fuselier Robin, Jules Fuselier, Alcide Fuselier, Bridget Fuselier, Edward Fuselier, Alfred Fuselier, and Furges Fuselier, Gabriel and Bazilie's heirs, purchased the Property from the sheriff. The title chain is silent until 1928, when BSF began paying the taxes on the Property, except for a four-year window for which the "big assessment books were missing."

In 1963, BSF allowed the taxes to go delinquent, and Bayou Tortue Livestock, Inc. purchased tax title to the Property from the St. Martin Parish Sheriff. Bayou Tortue Livestock sold timber and entered mineral leases. All of the timber sales, though, involved land in addition to the Property.

In 1985, Bayou Tortue Livestock sold the Property to BSF. Mr. Billeaud's search also located mineral leases over the Property BSF and the Fuseliers entered.

7

Charles Billeaud is Chairman of the Board of BSF. The company was founded by his great-grandfather, Marshall Billeaud. Mr. Billeaud has only been to the Property once or twice. He "would think" that members of the Bas-Font Hunting Club would cross Bayou Tortue to hunt the Property. He recalls going to observe timber harvesting that was undertaken by David Dubroc that he thought was on the Property.

Mr. Billeaud is not a member of Bas-Font Hunting Club. The club has a lease with BSF that covers property owned by BSF including, but not limited to, the Property. The club has leased BSF land since the early 1990s.

The Fuselier family never communicated to him their claim over the Property until he was served with this suit. He believes that the lease to Howard Champagne was property east of the Property. Mr. Billeaud believes that BSF posted the Property because it posts all its land.

Michael Billeaud is a member of Bas-Font Hunting Club. In the early 1990s, he was told of the Fuselier's claim to the Property by Blaise Armentor. He is also aware that mineral producers were obtaining leases to the Property from BSF and the Fuseliers.

Members of the Bas-Font Hunting Club have been on the Property "quite a bit" to hunt. Mr. Billeaud frequently visits the Property. The club posted the Property, but its signs were torn down soon thereafter. Mr. Billeaud recalls encountering one of the Martins hunting the Property.

Mr. Billeaud confirmed that BSF conducts no agricultural activity on the St. Martin Parish side of Bayou Tortue.

Karl Girouard is a member of Bas-Font Hunting Club. He helped found the club in the 1980s or 1990s. Mr. Girouard hunted the St. Martin Parish side of Bayou Tortue once a year for several years in search of an alligator whose footprint was

larger than that of a man who wears a size thirteen shoe. He never succeeded. Mr. Girouard has only encountered Blaise Armentor and other members of the Bayou Tortue Hunting club on the Property.

Dudley Hebert worked for Bayou Tortue Livestock in the 1970s. He recalls going to the property in 1973 or 1974 while a timber operation was taking place.

The trial court took the matter under advisement and issued written reasons for judgment in favor of GFL. In the reasons, the trial court found that Auguste Fuselier had maintained physical possession of the Property since he began raising cattle there in 1927. The trial court further found that possession by Auguste Fuselier continued through Charles Fuselier and had not been interrupted through the commencement of this litigation in 2015. BSF had not evicted Fuselier from the property. The trial court declared GFL to be the owner of the Property. Judgment to that effect was signed on October 23, 2018. This appeal followed.

## ASSIGNMENTS OF ERROR

BSF assigns as error the trial court's denial of its motion for summary judgment because it proved that it had "better title" for purposes of La.Code Civ.P. art. 3654. BSF also assigns errors to the following: the trial court's exclusion of affidavits contained in the public records of St. Martin Parish; the trial court's findings of fact and application of the law of acquisitive prescription in declaring GFL to be the owner of the Property; and the trial court's assessment of court costs. BSF urges that this court review the case de novo because the trial court legally erred in excluding the affidavits contained in the public record.

## ANALYSIS

*BSF's MOTION FOR SUMMARY JUDGMENT*

Proof of title in a declaratory judgment action involving immovable property is governed by La.Code Civ.P. art. 3654, which provides:

9

When the issue of ownership of immovable property or of a real right therein is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right therein is so presented, the court shall render judgment in favor of the party:

(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action, unless the adverse party proves that he has acquired ownership from a previous owner or by acquisitive prescription; or

(2) Who proves better title to the immovable property or real right therein, when neither party would be entitled to the possession of the immovable property or real right therein in a possessory action.

BSF argues that because it proved better title in its motion for summary judgment, the trial court was bound to grant judgment in its favor. BSF argues that the payment of taxes from 1928 through 1962 by BSF, the tax title held by Bayou Tortue Livestock, and the subsequent sale of Bayou Tortue Livestock's assets to BSF prove its title to the Property. Accordingly, the trial court was mandated to grant it summary judgment.

This argument fails to consider the wording of Article 3654, which mandates a court to grant judgment either to the party who would be entitled to possession, unless the adverse party proves that he acquired ownership through a previous owner or to the party who has better title "when neither party would be entitled to possession of the immovable property or a real right therein in a possessory action." Our reading of Article 3654(2) leads us to the conclusion that in order to declare that a party has proven better title, the trial court must first determine that neither party would be entitled to possession. The competing motions for summary judgment filed by BSF and Gabriel Fuselier, LLC, negated any conclusion that a party would be entitled to possession under the requirements of a motion for summary judgment,

because there was a genuine issue of material fact regarding who had possession of the Property. Accordingly, we find no error in the trial court's ruling.

*DE NOVO REVIEW*

> It is well-settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO,* 549 So.2d 840, 844 (La.1989). However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record and determine a preponderance of the evidence. *Ferrell v. Fireman's Fund Ins. Co.,* 94–1252 (La.2/20/95); 650 So.2d 742, 747, *rev'd in part, on other grounds,* 96–3028 (La.7/1/97); 696 So.2d 569, *reh'g denied,* 96–3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. *See Lasha v. Olin Corp.,* 625 So.2d 1002, 1006 (La.1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *See Lasha,* 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts *de novo. Lasha,* 625 So.2d at 1006.

*Evans v. Lungrin*, 97-541, 97-577, pp. 6-7 (La. 2/6/98), 708 So.2d 731, 735. BSF urges us to conduct a de novo review of the evidence because the trial court erred in excluding the affidavits contained in the public record.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La.Code Evid. art. 801(C). Hearsay is generally not admissible. La.Code Evid. art. 802. There are exceptions to the general rule. The exceptions are set forth in La.Code Evid. arts. 803, 803.1, and 804.

BSF argues that the affidavits that were excluded from evidence were subject to several exceptions to the hearsay rule, specifically La.Code Evid. arts. 607(C) and (D); 803(8); 803(14); 803(15); 803(16); and 803(20). Ancient documents, as envisioned in La.Code Evid. art. 803(16), are presumed authentic if recorded in the

official parish records for more than thirty years. *See* La.R.S. 13:3729. Statements in ancient documents that have existed for thirty years or more and that have established authenticity or that have been recorded are admissible. La.Code Evid. art. 803(16). The affidavits in question were of Lucius Weatherall; May Bros., Inc., through Jack Eaton; Bayou Tortue Livestock, Inc., through Charles Billeaud; Dudley Hebert; and Charles Billeaud. Reviewing these affidavits, though, the court discerns that they assert activities on behalf of Bayou Tortue Livestock and BSF that date back to 1964 at the earliest. The trial court erred in not admitting the affidavits, but the error was harmless because the trial court found that Gabriel Fuselier, LLC acquired ownership through prescription before the tax sale in 1963. The error did not interdict the fact-finding process. *See Ferrell v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742. We, therefore, decline to review this matter de novo.

*PROPER STANDARD OF REVIEW*

> In Louisiana, appellate courts review both law and facts. La. Const. art. 5, §10(B). The applicable standard of review for a factual finding is the manifestly erroneous or clearly wrong standard. To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. *Stobart v. State, Dep't of Transp. and Development,* 617 So.2d 880, 882 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882–883. Accordingly, where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. *Id* at 883.

> Nonetheless, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, a reviewing court may well find

manifest error. *Rosell v. ESCO,* 549 So.2d 840, 844–45 (La.1989). Where such factors are not present, however, and a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

*S.J. v. Lafayette Par. Sch. Bd.*, 09-2195, pp. 12-13 (La. 7/6/10), 41 So.3d 1119, 1127-28. "Possession is a matter of fact[.]" La.Civ. Code art. 3422. The appropriate standard is manifest error.

*ACQUISITIVE PRESCRIPTION BY GFL*

"Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. Acquisitive prescription accrues in ten years in favor of a possessor who has good faith and just title over a thing susceptible of acquisition by prescription. La.Civ.Code art. 3475. Good faith is an objectively reasonable belief that one is the owner of the thing. La.Civ.Code art. 3480. "A just title is a juridical act, such as a sale, exchange, or donation sufficient to transfer ownership or another real right. The act must be written, valid in form, and filed for registry in the conveyance records of the parish in which the immovable is situated." La.Civ.Code art. 3483. A party may acquire ownership or other real rights in immovables without the need for good faith or just title by possession for thirty years. La.Civ.Code art. 3486.

"To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. A possessor under title constructively possesses the immovable within the limits of his title, while one who possesses without title "has possession only of the area he actually possesses." La.Civ.Code art. 3426. "The possession of the decedent is transferred to his successors, whether testate or

13

intestate, and if testate, whether particular, general, or universal legatees." La.Civ.Code art. 936.[6]

"Once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporeally. This is civil possession." La.Civ.Code art. 3431. "The intent to retain possession is presumed unless there is clear proof of a contrary intention." La.Civ.Code art. 3432. Possession is lost through abandonment or eviction if the possessor does not recover possession within a year of the eviction. La.Civ.Code arts. 3433 and 3434. "One who proves that he had possession at different times is presumed to have possessed during the intermediate period." La.Civ.Code art. 3443.

The trial court found that GFL had civil possession of the property since the 1835 sheriff's sale. Implicit in this finding is a determination that Auguste Fuselier was a descendant of Gabriel and Bazilie, because their descendants purchased the property at the 1835 sheriff's sale, and it is only through these descendants that Auguste could have civil possession, and only through Auguste could GFL have any possession. BSF maintains in its brief that there is no evidence that Auguste was a descendant of Gabriel Fuselier. According to Charles A. Fuselier, however, his grandfather, Auguste, was a descendant of Gabriel Fuselier. Roy Billeaud did not contradict this contention; he merely testified that his title abstracting did not reveal

---

[6] Louisiana Civil Code Article 936 was enacted by 1997 La. Acts No. 1421, §1. Prior to 1997, La.Civ.Code art. 943 provided:

> The right of possession, which the deceased had, being continued in the person of the heir, it results that this possession is transmitted to the heir with all its defects, as well as its advantages, the change in the proprietor producing no alteration in the nature of the possession.
>
> Thus, the extent of the rights of the deceased regulates those of the heir, who succeeds to all his rights which can be transmitted, that is, to all those which are not, like usufruct, attached to the person of the deceased.

This article was enacted in the 1825 Civil Code and reproduced in the 1870 Civil Code.

that to be the case. The testimony of Charles A. Fuselier establishes a reasonable basis in the record for this finding which we cannot reverse.

Death does not interrupt the deceased's possession. However, a universal successor has no title of his own. *See* La.Civ.Code art. 3483, comment (b). Descendants continue the possession of their ancestors. La.Civ.Code art. 936. The record contains no evidence of any acts of possession by anyone between 1835 and the commencement of Auguste Fuselier's activities on the land, and he was a descendant of Gabriel Fuselier.

A fact that was lost on both parties and the trial court is that Auguste was only one of many descendants of Gabriel and Bazilie; this fact was discussed by Charles A. Fuselier, who acted as administrator of the Succession of Gabriel Fuselier. After the succession was re-opened in 1974 for the purpose of entering mineral leases, an escrow account was established into which those lease payments and royalties were deposited for distribution to the heirs at some point in the future. As of trial, that account held many thousands of dollars, awaiting the day when someone establishes the roster of living heirs.

The general rule is that possession by a co-owner is exercised on behalf of all co-owners. *Creek Mgmt., L.L.C. v. Unopened Succession and Unknown Heirs or Legatees of Williams*, 51,392 (La.App. 2 Cir. 5/17/17), 223 So.3d 1194, *writ denied*, 17-1252 (La. 10/27/17), 228 So.3d 1222.

> A co-owner, or his universal successor, may commence to prescribe when he demonstrates by overt and unambiguous acts sufficient to give notice to his co-owner that he intends to possess the property for himself. The acquisition and recordation of a title from a person other than a co-owner thus may mark the commencement of prescription.

La.Civ.Code art. 3478. The record does not support the proposition that Auguste intended his possession to be hostile to other co-owners. Indeed, he tolerated

hunting and the like by members of the Martin family, to whom he knew he was related.

We find no manifest error in the trial court's determination that Auguste Fuselier possessed the property. This is not, though, a case of acquisitive prescription but continued possession by a co-owner. That represents an error of law that did not interdict the fact-finding process. To the extent that the trial court's judgment declares sole ownership to Gabriel Fuselier, LLC, it is amended to declare Gabriel Fuselier, LLC a co-owner of the property along with the other descendants of Clara Fuselier Brian, Bluger Adolphe Fuselier, Gabriel Fuselier III, Oglea Fuselier Robin, Jules Fuselier, Alcide Fuselier, Bridget Fuselier, Edward Fuselier, Alfred Fuselier, and Furges Fuselier.

BSF's claims just title from the 1963 tax sale. At the time, tax sales were governed by the Louisiana Constitution of 1921. Article X, Section 11 of the 1921 constitution provided a tax-sale annulment period of six months that commenced on service of the notice of the sale or three years that commenced on the sale's recordation if no notice was given. *Id.* The Constitution of 1974 provided for six-month period for pursuing annulment of a tax sale. Prior to 2009, though, La.R.S. 47:2226 provided that the six-month annulment period did not run against a tax debtor who maintained possession of the property.

Title 47 of the Louisiana Revised Statutes establishes procedures for quieting title to property that has been sold at tax sale, either through an ordinary petition to quiet title or through monition. *See* La.R.S. 47:2266, 2271-80. The record does not reflect that Bayou Tortue Livestock or BSF has undertaken any of these measures.

BSF also prayed in its reconventional demand that it be declared owner of the Property by virtue of acquisitive prescription. The trial court found that BSF did nothing to evict or otherwise interrupt GFL's possession of the property. Given the

16

conflicting evidence regarding timber harvesting and whether it occurred on the property and regarding hunting on the property and given the conceded evidence that mineral leases were being executed by both parties, we cannot conclude that the trial court manifestly erred.

## CONCLUSION

Gabriel Fuselier, LLC, is an entity whose only members are the Succession of Gabriel and Bazilie Fuselier and the Succession of Auguste Fuselier. The Succession of Gabriel and Bazilie Fuselier held no interest in the Property after it was seized and sold to their heirs at sheriff's sale in 1835. Thereafter, the interest in the Property followed their heirs, one of whom was Auguste. When Auguste occupied the property, he did so on behalf of all co-owners, as evidenced by a lack of hostility to the Property's use by other members of the family. This case is not, therefore, an acquisitive prescription case, but a case involving continued civil possession through succeeding generations.

The judgment of the trial court is affirmed as amended. IT IS ORDERED, ADJUDGED, AND DECREED that Gabriel Fuselier, LLC is entitled to judgment against Billeaud Sugar Factory, Inc. declaring Gabriel Fuselier, LLC, along with the other descendants of Clara Fuselier Brian, Bluger Adolphe Fuselier, Gabriel Fuselier III, Oglea Fuselier Robin, Jules Fuselier, Alcide Fuselier, Bridget Fuselier, Edward Fuselier, Alfred Fuselier, and Furges Fuselier to be the owners of the following described property:

> A certain tract of land containing 182.28 acres, more or less, being the irregular Sections 64 and 65, Township 10 South, Range 5 East, St. Martin Parish, Louisiana, located east of Bayou Tortue in St. Martin Parish, Louisiana.

All costs of these proceedings are taxed to Billeaud Sugar Factory, Inc.

**AFFIRMED AS AMENDED.**

17